No. 92-389

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

IN RE THE MARRIAGE OF

MARCIA LORRAINE SELSOR,

      Petitioner and Appellant,

  and

BEAL MONROE MOSSMAN,

      Respondent and Respondent.

FILED

FEB 2 - 1993

Ed Smith

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable William J. Speare, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Gregory R. Todd, Towe, Ball, Enright & Mackey,
        Billings, Montana

    For Respondent:

        Kevin T. Sweeney, Sweeney & Healow, Billings,
        Montana

Submitted on Briefs:  December 22, 1992

Decided:  February 2, 1993

Filed:

          / Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

Marcia Selsor (Selsor) appeals the findings of fact, conclusions of law and order entered in this dissolution of Marriage by the District Court for the Thirteenth Judicial District, Yellowstone County. We affirm the District Court.

The sole issue presented for our consideration is:

Did the District Court equitably apportion the marital assets between the parties?

Selsor and Beal Mossman (Mossman) were married on June 13, 1980. At the time of marriage, Selsor was an associate professor of art with five years of teaching service at Eastern Montana College (Eastern). Mossman was a full professor of psychology at Eastern with over ten years of teaching service in that capacity. Eight and one-half years later, on January 15, 1989, the parties separated. Selsor petitioned the District Court for a dissolution of marriage in February 1989. At the time of dissolution, both parties earned roughly the same income. Selsor earned approximately $37,000 per year, and Mossman earned approximately $36,300 per year.

Before the parties married, Mossman owned real property located on Poly Drive in Billings with an equity of approximately $46,000. The property was used as rental property. In 1985, Mossman sold the Poly Drive property and invested the proceeds in three brokerage accounts. When the parties separated three years

2

later, the accounts had increased in value to approximately $79,000. In addition, both Selsor and Mossman contributed to their separate teacher's retirement accounts and deferred compensation accounts during their marriage. In 1988, Mossman repurchased the Poly Drive property at an FHA foreclosure sale for $35,000. He again rented this property.

During the marriage, Selsor and Mossman accumulated various joint assets and liabilities. The major items included real rental property, a refinanced mortgage to improve their residence, and investments. Selsor does not dispute the valuation or division of the majority of the marital assets or liabilities. Her appeal centers around the District Court's award to each party of his or her respective retirement and deferred compensation accounts.

Did the District Court equitably apportion the marital assets between the parties?

Selsor contends that because each party was awarded his or her respective retirement and deferred compensation accounts, the District Court did not equitably apportion the marital assets. She claims she received a disproportionate, unfair, and inequitable portion of the property of the parties. We disagree.

With the exception of the deferred compensation and retirement accounts, Selsor admits, and the record supports, that both parties were awarded real and personal property of approximately the same

3

value. Although she does not agree with the District Court's valuation of the Poly Drive property, Selsor admits that the valuation of this real property is not the major issue. At trial, Selsor placed a value of $65,000 on this property while Mossman valued the property at $48,000. Neither party presented any evidence as to the appraised value of the property. The District Court valued the Poly Drive property at $50,000. Our standard of review in regard to the factual findings of the District Court as to the value placed upon marital property, as well as the division of marital property, is whether the valuation or division is clearly erroneous. In re the Marriage of Danelson (Mont. 1992), 833 P.2d 215, 219, 49 St.Rep. 597, 599. In the case at bar, we hold the $50,000 valuation placed upon the Poly Drive property was not clearly erroneous and will not be disturbed on appeal.

For purposes of clarity, we will also briefly discuss the $79,000 in the three brokerage accounts. As stated above, the brokerage accounts were opened when Mossman sold the Poly Drive property. The record supports the District Court's findings that Selsor did not contribute to the creation or maintenance of these accounts. At trial, Mossman testified that he withdrew the money from these accounts shortly after the parties separated, and gambled it away in Nevada. Selsor offered no testimony to contradict this story. The District Court excluded this asset from

4

the marital estate because it reasoned it had no way to retrieve and divide property which was no longer in existence.

We now turn to Selsor's main contention. She argues that because her deferred compensation and retirement accounts are substantially less than Mossman's, the division of the marital estate was inequitable. As to the retirement accounts, Selsor relies upon a stipulated economic report of the present values of the retirement plans introduced at trial. The report, prepared by an economist, determined the present value of Mossman's and Selsor's retirement benefits in the Montana Teachers' Retirement System (MTRS) accruing between June 1980 and July 1990. As of July 31, 1990, the gross present value of Mossman's account was $97,645.37. Selsor's account had a gross present value of $30,941.37.

Section 40-4-202, MCA, controls the division of property in dissolutions of marriage.

> In a proceeding for dissolution of a marriage, . . . , the court, without regard to marital misconduct, shall, . . . , finally equitably apportion between the parties the property and assets belonging to either or both, however and whenever acquired and whether the title thereto is in the name of the husband or wife or both.

Section 40-4-202(1), MCA. On its face, the statute does not speak to equality in apportionment of the marital property and assets. Rather, the statute speaks to an equitable division. As we have said, "[it] is well settled in Montana that property division does

5

not need to be equal but instead must be equitable." In re the Marriage of Scott (Mont. 1992), 835 P.2d 710, 714, 49 St.Rep. 634, 636.

The District Court found that Mossman had a larger retirement account than Selsor because he had worked longer than she had. The District Court reasoned that the difference in the retirement accounts was "readily explainable as being earned prior to marriage and after separation" and reflects what "is an equitable division." The record supports this finding. After taking into account several necessary variables, the economic report concluded that the present value (as of July 31, 1990) of Mossman's contributions to his retirement account at the time of marriage were $23,615.80. Likewise, utilizing identical methodology, the economic report concluded that the present value of Selsor's contributions to her retirement account at the time of marriage were $7,445.47. The economic report used a fixed rate of 7 percent as the interest the retirement accounts would earn.

Taking into account that Mossman had three times the accrued benefits of Selsor at the time of marriage, it is not anomalous that Mossman's retirement account would grow more quickly than Selsor's, notwithstanding the fact that the rate of return (7 percent) was the same for both parties. Moreover, though the record reveals no date specific, Selsor admits that shortly after the parties were married, she became a full professor and chair of

6

the art department at Eastern. Thus, her salary was at par with Mossman's for the majority of the marriage. It follows then, that both parties contributed approximately the same amount to their respective retirement accounts during the duration of the marriage.

Under § 19-4-602, MCA, normal member contributions to the MTRS are 7.044 percent of earned compensation. Selsor's exhibit numbers 5 and 6 reveal that for the pay period ending January 12, 1992, the parties' bi-weekly contributions to their respective retirement plans were within $2.52 of each other, Selsor's contribution being the higher. In light of the record, it is evident that the increase in the parties' respective retirement accounts were based upon approximately equal earnings, equivalent rates of return, and equivalent member contributions. Quite simply, the present value of Mossman's retirement account as listed in the economic report is greater because of the amount accrued prior to marriage. It is not based upon disproportionate contributions by Selsor into Mossman's retirement account.

"Section 40-4-202(1), MCA, refers to a spouse's contribution to 'the increased value of property acquired prior to marriage,'. . . ." Scott, 835 P.2d at 714. In the case at bar, we hold Selsor made no contribution which resulted in an increased value of the retirement account Mossman had acquire prior to marriage. The District Court's finding that each party was entitled to his or her respective retirement account was not clearly erroneous.

7

Finally, we address Selsor's contention that the division of the deferred compensation accounts was inequitable. The record reveals that as of December 31, 1991, Mossman's deferred compensation account was worth $30,600. Selsor's deferred compensation account was worth $21,208 as of June 30, 1991. The parties agreed that the deferred compensation accounts were initiated during the marriage, although neither was certain as to the exact date the accounts were opened. By Selsor's own admission, the program allowed either party to defer any amount of his or her respective income so long as the amount did not exceed 20 percent of annual gross income. Because the parties were earning approximately the same income, and were free to choose how much of their income they wished to defer (within the limits set by the program), we hold it was not error for the District Court to find that each party was entitled to his or her respective deferred compensation account.

In the case at bar, the findings of the District Court as to the division of marital property were not clearly erroneous. Accordingly, the judgment is affirmed.

Chief Justice

8

We concur:

_John Conway Harrison_

_William E Hunter_

_P. C. McDonough_

_____ Keben
Justices

February 2, 1993

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:


GREGORY R. TODD, ESQ.
Attorney at Law
Transwestern One Bldg., Rm. 205
404 N. 31st St.
Billings, MT   59101

Kevin T. Sweeney, Esq.
SWEENEY & HEALOW
1250 15th St. West, Suite #202
Billings, MT   59102


ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy