No. 90-476

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

IN RE THE MARRIAGE OF
PAMELA MAXWELL,

     Petitioner and Respondent,

  -vs-

HOWARD MAXWELL,

     Respondent and Appellant.

FILED

APR 29 1991

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Eighth Judicial District,
                In and for the County of Cascade,
                The Honorable John M. McCarvel, Judge presiding.


COUNSEL OF RECORD:

     For Appellant:

         Susan L. Weber, Miller & Cook, Great Falls, Montana

     For Respondent:

         Antonia P. Marra, Bell & Marra, Great Falls, Montana


Submitted on Briefs: April 4, 1991

Decided: April 29, 1991

Filed:

Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

Howard Maxwell appeals from a judgment of the District Court of the Eighth Judicial District, Cascade County, Montana, Judge John M. McCarvel presiding, granting Pamela Maxwell primary physical custody of the couple's minor children. We reverse and remand.

We frame the issues as follows:

1. Did the District Court err in failing to consider all of the factors set forth in § 40-4-212, MCA, in determining the children's best interests?

2. Did the District Court err in refusing to allow certain testimony of witnesses offered by the father?

The Maxwells were married eleven years and had three sons, ages 9, 8, and 4, at the time of the dissolution. Two hearings were held. On June 18, 1990, the District Court considered the father's motions for temporary custody and a home study. The court ordered temporary joint custody with time between the two parents to be shared equally. The court also ordered a home study by the Montana Department of Social and Rehabilitation Services.

The home study was conducted by the same social worker who testified at the first hearing as a witness for the father. Names were given to her by both the mother and father. The social worker interviewed everyone on the list, except for three people whose names were supplied by the mother: Candy Maxwell, the father's

sister-in-law, Sue Lundgren, the children's maternal grandmother and Judy Lundgren. The social worker testified at the second hearing that she had interviewed all persons said by the mother to have had knowledge of the mother's parenting skills.

The Home and Family Assessment documented a history of the mother's physical and verbal abuse directed at the children and others. While most of the accounts came from members of the father's family, others who were not members of the Maxwell family corroborated their information.

The most damaging narratives came from the children themselves, who innocently accepted the blame for their mother's abuse and viewed the mother's abusive behavior as normal. As an example, the oldest child said he was at fault for nosebleeds caused by his mother's slaps to the head because he "forgot to cover his nose with his arms."

The social worker, the only expert who testified in this case, concluded:

> I found little substantiating evidence to support Pam's statements she has never abused her children, including statements made by her own children as they described, in what in my opinion is physical and emotional abuse. I found no evidence to support that Howard is an abusive, neglectful parent.

The social worker recommended that the father have sole custody and that the mother be given "reasonable visitation." The social worker also urged the court to greatly limit visitation by the mother until she completed a psychological evaluation to determine the extent of the mother's needs for counseling. Counseling was

also recommended for the children and for the father to "resolve issues in regards to his unhealthy relationship with Pam" and "development of parenting skills."

During the second hearing held July 27, 1990, the court heard testimony from the mother; two of the individuals whom the social worker had not interviewed, Candy Maxwell and Sue Lundgren; the social worker; and the two oldest sons.

Candy Maxwell, sister-in-law of the father, testified that the mother disciplined the children as any other mother would by spanking them after three or four warnings. She said that the mother had recently adopted a penny method, giving and taking away money according to the children's behavior. Mrs. Maxwell stated that she had not seen the father discipline the children because she usually visited the mother while the father was working.

The maternal grandmother, Sue Lundgren, testified that, contrary to what many members of the Maxwell family and others had said, she had never heard the mother call the children obscene names, scream at the children, or hit the children.

The eight and nine-year-old sons again told the judge in chambers that they would rather stay with their mother because they disliked the father's girlfriend. The court refused to hear testimony from any of the father's witnesses whose interviews were detailed in the home study.

The District Court awarded the parents joint custody with primary custody to remain with the mother. In the findings of fact

and conclusions of law of the dissolution decree, except to mention that a home study was ordered, the District Court did not address the Home and Family Assessment or the social worker's recommendations.

I

Did the District Court err in failing to consider all of the factors set forth in § 40-4-212, MCA, in determining the children's best interests?

In child custody matters the primary consideration is the child's best interest. Section 40-4-223, MCA. In determining the child's best interest the court shall consider the following factors:

(a) the wishes of the child's parent or parents as to his custody;

(b) the wishes of the child as to his custodian;

(c) the interaction and interrelationship of the child with his parent or parents, his siblings, and any other person who may significantly affect the child's best interest;

(d) the child's adjustment to his home, school, and community;

(e) the mental and physical health of all individuals involved;

(f) physical abuse or threat of physical abuse by one parent against the other parent or the child; and

(g) chemical dependency, as defined in 53-24-103, or chemical abuse on the part of either parent.

Section 40-4-212, MCA. The district court can weigh additional factors, such as "the parents' ability to cooperate in their

parental roles, the child's relationship with both parents, and the geographic proximity of the parents' residences." Lorenz v. Lorenz (1990), 242 Mont. 62, 66-67, 788 P.2d 328, 331.

While the district court is not required to make specific findings as to each factor, the "'essential and determining facts upon which the District Court rested its conclusion' must be expressed." In re Marriage of Bloom-Higham (1987), 227 Mont. 217, 219, 738 P.2d 114, 115 (quoting In re Marriage of Keating (1984), 212 Mont. 462, 467, 689 P.2d 249, 251-252). However, this does not mean that the district court can ignore circumstances which may endanger the children. Specifically, the District Court, in stating its reasons for awarding primary physical custody to the mother, overlooked "the mental and physical health of all individuals involved" and "physical abuse or threat of physical abuse by one parent against the other parent or the child." Sections 40-4-212(e) and (f), MCA.

Even if only part of the information in the Home and Family Assessment is true, a great deal of evidence still exists to support the social worker's conclusion that the mother emotionally and physically abused the children. In contrast, none of the persons interviewed or witnesses in court testified that the father was abusive or a poor parent.

The District Court seemed to rely chiefly on the children's testimony that they wished to stay with the mother. While the children's wishes are a factor to be considered under § 40-4-212,

6

MCA, these wishes cannot be given priority when the evidence indicates that the mother is unfit.

This policy is reflected by the rule in Montana that joint custody is preferred, but "a finding that one parent physically abused the other parent or the child is a sufficient basis for finding that joint custody is not in the best interest of the child." Section 40-4-224, MCA.

The standard of review in a child custody case is whether the findings of the district court are clearly erroneous. The district court's decision will be upheld unless a clear abuse of discretion is shown. In re Marriage of Susen (1990), 242 Mont. 10, 13-14, 788 P.2d 332, 334.

In Bloom-Higham, the district court ordered an investigation and report concerning custodial arrangements for the child pursuant to § 40-4-215, MCA, but did not indicate any consideration of the report in reaching its final custody decision. We found the court's failure to consider the report an abuse of discretion. Bloom-Higham, 227 Mont. at 220, 738 P.2d at 115-116.

The District Court clearly abused its discretion in failing to consider the home study and all of the factors of § 40-4-212, MCA, particularly the mother's mental health and abuse of the children. Notably missing was any order of a psychological evaluation of the mother to determine whether she was capable of parenting the children or order of counseling for the mother and other family members.

The judgment of the District Court is reversed with direction to award primary physical custody of the three sons to the father.

## II

Did the District Court err in refusing to allow certain testimony of witnesses offered by the father?

Since the court's decision has been reversed, we need not discuss this issue.

_John Conway Harrison_
Justice

We concur:

_Karla M. Gray_

_William E. Hunt_

_Terry Trieweiler_

_Justices_