No. 92-195

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

IN RE THE MARRIAGE OF

DANIEL N. McLEAN,

      Petitioner and Respondent,

  and

KATHLEEN M. FLEURY,

      Respondent and Appellant.

FILED

JAN 21 1993

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Robert W. Holmstrom, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Kathleen M. Fleury, Pro Se, Helena, Montana,

      For Respondent:

          Mark D. Parker, Parker Law Firm,
Billings, Montana

Submitted on Briefs:  September 24, 1992

Decided:  January 21, 1993

Filed:

Clerk

Justice William E. Hunt, Sr., delivered the opinion of the Court.

Appellant Kathleen M. Fleury, appearing pro se, appeals the Findings of Fact, Conclusions of Law, and Decree of Dissolution of the Thirteenth Judicial District Court, Yellowstone County.

We affirm and remand.

Kathleen presents six issues to this Court for consideration.

1. Did the District Court err in awarding joint custody of the children to the parties?

2. Did the District Court abuse its discretion in the award of child support?

3. Was the District Court's valuation and distribution of the marital estate clearly erroneous?

4. Did the District Court err in failing to award Kathleen maintenance?

5. Did the District Court abuse its discretion in denying Kathleen attorney fees?

6. Did the District Court Judge commit error when he failed to disqualify or recuse himself from the case due to his participation in pretrial settlement negotiations?

The parties were married on June 16, 1979, in Missoula and have two children--Katharine F. McLean, born March 23, 1986, and James B. McLean, born July 5, 1988. James has an asthmatic condition which requires a considerable amount of medical attention.

Kathleen and Daniel attended the University of Montana Law School and both obtained their Juris Doctorate from the school.

2

Daniel clerked for a Federal District Court Judge for one year. He was then hired as an associate for a law firm located in Billings. Within a few years, Daniel was promoted to partner with the firm. In 1990, he earned $75,000 and it was projected that he will earn between $90,000 to $105,000 in 1991.

Kathleen is also an attorney and is employed as a coordinator for the Bureau of Indian Affairs of the State of Montana, earning $34,000 a year. The position is a political appointment, and therefore, is not a permanent occupation. Kathleen lives in Helena and Daniel lives in Billings.

The parties separated on September 8, 1990. Daniel filed the petition for dissolution on September 26, 1990. Prior to trial, several hearings and meetings with the District Court were held in an effort to form an agreement relating to maintenance, child support, and custody. During the dissolution proceedings, both parties were represented by counsel. A bench trial was held on August 6, 1991. However, trial was recessed to allow Daniel to conduct additional discovery upon certain matters which were not disclosed to the court. Trial resumed on October 2, 1991. On December 2, 1991, the court issued its findings of fact, conclusions of law, and decree of dissolution. On February 3, 1992, the court amended its decree to reflect that an additional $10,000 of Keogh interest should have been listed as an asset to Kathleen, and to add specific provisions relating to child custody and support not included in the original decree. Kathleen appeals the findings of the District Court. Kathleen did attempt to submit

3

a psychological exam on appeal. Upon Daniel's motion, this Court ordered that the exhibit be stricken from the briefs and not be considered for this appeal.

On December 24, 1992, Kathleen filed a motion with this Court to clarify the amended decree of February 3, 1992, regarding the division of Daniel's Keogh account. The motion provides for the parties' social security numbers and bank account numbers, which were not included in the amended decree. We remand to the District Court for further consideration of this matter.

I.

Did the District Court err in awarding joint custody of the children to the parties?

Our standard of review in child custody matters is whether the district court abused its discretion. In re Marriage of Reininghaus (1991), 250 Mont. 86, 817 P.2d 1159. When determining child custody, the district court must take into consideration the best interests of the children. Section 40-4-212, MCA. The court shall consider, but is not limited to, the factors set out in § 40-4-212(a)-(g), MCA. The rule in Montana is that joint custody is preferred absent "a finding that one parent physically abused the other parent or the child is a sufficient basis for finding that joint custody is not in the best interest of the child." Section 40-4-224(1), MCA.

In its amended decree, the court awarded Daniel custody of the children during the summer months, with Kathleen having custody of the children for the rest of the year. Kathleen contends that this

4

is error because the court based its decision on a joint custody plan which provided for a temporary stipulation between the parties pending the outcome of a court ordered independent evaluation which it did not admit into evidence or consider in its final decree.

We have recently discussed this issue in In re Marriage of Maxwell (1991), 248 Mont. 189, 810 P.2d 311. In that case, the District Court awarded joint custody, with primary custody to the mother. The court ordered a home study but did not address the home and family assessment or the social worker's recommendations. We held that the District Court abused its discretion when it ordered an investigation and report concerning custodial arrangements pursuant to § 40-4-215, MCA, but failed consider the report in its final custody decision. Maxwell, 810 P.2d at 313. See also In re Marriage of Bloom-Higham (1987), 227 Mont. 217, 738 P.2d 114.

In this instance, the parties stipulated that they would seek psychological evaluations. In the stipulation, they agreed that they were not bound by the results of the evaluation but either party could submit the report into evidence if so inclined. The court did not order the evaluations and the report was never offered into evidence by either party. There was a pretrial conference held on the morning of the trial. After the conference, the following exchange took place between Kathleen's counsel and the District Court:

> MRS. NYE: Your Honor, Marian Martin is only available until 11:00.

5

THE COURT: It is my understanding that Marian Martin is not necessary as a witness based upon what was told to me in chambers, and I don't want it changed now.

MRS. NYE: Thank you, Your Honor. We have reached an agreement as to what the further interlineation is.

Thus, it appears that the court did not hear any further testimony regarding custody because there was an agreement between the parties regarding custody and the need for further testimony was not warranted. In addition, the record does not reflect that Marian Martin was offered as a witness after the above discussion. During trial, Daniel's counsel submitted a joint custody plan, which was stipulated to by Kathleen's attorney. Kathleen claims on appeal that her counsel stipulated to the plan without her knowledge or consent. The record shows that the joint custody plan was stipulated to in open court with both parties in attendance.

Section 40-4-201(1), MCA, allows the parties to enter into agreements regarding support, custody, and visitation of the children. We have held that parties are bound by the stipulations made by their counsel in open court. Daniels v. Dean (Mont. 1992), 833 P.2d 1078, 1081, 49 St. Rep. 535, 537; § 37-61-401, MCA. We hold that the District Court did not err in awarding joint custody to both parties.

II.

Did the District Court abuse its discretion in the award of child support?

Our standard of review of a district court's findings relating to child support is that a presumption exists in favor of the

6

district court and we will overturn the court's findings only if it has abused its discretion. In re Marriage of Sacry (Mont. 1992), 833 P.2d 1035, 49 St. Rep. 452. In this instance, both parties submitted their proposed child support based on the Social and Rehabilitative Services Guidelines for Child Support (SRS guidelines). Daniel's work-sheet proposed that he owed approximately $450 in child support, while Kathleen's work-sheet claimed Daniel owed approximately $1600. The District Court found that $1000 was a reasonable level of child support. Both parties represented to the court that $1000 was consistent with the SRS guidelines. Kathleen contends that the $1000 figure was based upon Daniel's 1989 earnings which were $75,000. The record shows that Kathleen's work-sheet represented that Daniel's income was $94,000. Daniel testified at trial that he earned between $90,000 to $105,000 and that his income will continue to increase as a partner in his law firm. The court considered both parties' incomes for the determination of child support. We hold that the District Court did not abuse its discretion.

## III.

Was the District Court's valuation and distribution of the marital estate clearly erroneous?

Our standard of review relating to the division of marital property was recently clarified as whether the district court's findings of fact are clearly erroneous. In re Marriage of Danelson (Mont. 1992), 833 P.2d 215, 49 St. Rep. 597. Kathleen submits that the District Court was in error when it failed to value the

7

goodwill of Daniel's partnership interest in the law firm and ignored the testimony of her expert witness regarding the valuation of the partnership. She claims that as a result, the value of the marital estate has been substantially under-valued to her detriment.

We have recognized that the goodwill of a professional practice may be part of a marital estate subject to property division in a marriage dissolution. In re Marriage of Hull (1986), 219 Mont. 480, 488, 712 P.2d 1317, 1321. In this instance, the District Court refused to consider the goodwill of Daniel's law firm because of the partnership agreement signed by Daniel and the firm. The partnership agreement specifically provides that Daniel does not have any interest in the goodwill of the practice nor does he have any interest in the partnership's tangible or intangible assets. The partnership agreement was an arms-length transaction. The testimony of Kathleen's expert witness was irrelevant because the court ruled that the goodwill of the partnership was not a marital asset. The District Court did not abuse its discretion in finding that Daniel did not have an interest in the goodwill of the practice.

Following separation until trial, Kathleen incurred a credit card debt of $26,000 by obtaining cash advances and charging certain items to her account. At trial, Kathleen testified that most of the debt related to attorney fees and other expenses related to the dissolution. She offered into evidence a break down of the credit card transactions which indicated she had charged a

8

considerable amount of items for personal and familial use. Kathleen did not produce receipts of the credit card transactions to the court, but did provide a list of charges. Even so, it is apparent from her exhibit list that she also received several cash advances amounting to several thousand dollars. The court concluded that Kathleen did not fully explain the charges to the account. In In re Marriage of Scott (1990), 246 Mont. 10, 803 P.2d 620, we refused to accept a district court's determination that a post-separation credit card debt was a marital debt, even though the finding was supported by testimony. After examining the record, we conclude that it is unclear which credit card expenses were incurred for the children's sake and which expenses were incurred by Kathleen alone. Kathleen's own testimony is conflicting and confusing. We hold that the District Court did not err in awarding Kathleen the $26,000 marital debt.

Kathleen contends that the court erred in awarding her a $12,000 IRA account because these funds did not exist at the time of trial. Kathleen testified that she liquidated the parties' $12,000 IRA account because she needed money for attorney fees and to pay family expenses.

We have stated that to ensure a proper distribution of the marital estate requires a valuation of the marital estate at or near the time of dissolution. In re Marriage of Halverson (1988), 230 Mont. 226, 749 P.2d 518. Kathleen contends that In re Marriage of Lippert (1981), 192 Mont. 222, 627 P.2d 1206, controls the facts of this case. In Lippert, the husband poured $96,000 into bad

9

business ventures during the marriage. The court held that the $96,000 was part of the marital estate and awarded the wife $48,000. We held that the court erred when it valued the marital estate in 1977 when the husband became entangled in the business ventures before the date of dissolution in 1979. Lippert, 627 P.2d at 1209. Instead, this case is more similar to In re Marriage of Rogers (1987), 226 Mont. 163, 734 P.2d 677, where the husband sold the family's mobile home and liquidated an IDS account which the husband claimed was necessary to cover expenses for himself and his three children. We held that nothing in the record indicated that the husband's earnings were insufficient to meet his own and his children's expenses and that it was proper for the district court to award the wife $4500 to cover her share of the property. Rogers, 734 P.2d at 679.

In this instance, Kathleen was earning approximately $36,000 a year. In addition, she received $750 a month in child support which was later increased to $1000 per month. Kathleen has failed to demonstrate why she needed additional money to meet her and the children's expenses. We hold that the District Court's distribution of the marital estate was not clearly erroneous.

IV.

Did the District Court err in failing to award Kathleen maintenance?

Our standard of review in maintenance award cases is whether the district court's findings of fact are clearly erroneous. In re Marriage of Eschenbacher and Crepeau (Mont. 1992), 831 P.2d 1353,

10

49 St. Rep. 393. The district court may award maintenance after the marital property has been equitably distributed and the court has properly applied the criteria of § 40-4-203, MCA. Section 40-4-203(1), MCA, states that the district court may grant maintenance for either spouse only if it finds that the spouse requesting maintenance:

> (a) lacks sufficient property to provide for his reasonable needs; and

> (b) is unable to support himself through appropriate employment . . . .

In its findings, the court concluded that with Kathleen's earnings and child support, she can provide for her needs. Kathleen earns $36,000 a year and is an attorney. She also receives $1000 a month in child support. We hold that the District Court did not err in denying maintenance.

V.

Did the District Court abuse its discretion in denying Kathleen attorney fees?

Section 40-4-110, MCA, grants the district court the discretion to award reasonable attorney fees after considering the financial resources of both parties. Absent an abuse of discretion, this Court will not overturn the district court's decision denying attorney fees. In re Marriage of Manus (1987), 225 Mont. 457, 733 P.2d 1275. This Court has stated that the awarding of attorney fees is clearly permissive under § 40-4-110, MCA.

11

In this instance, Kathleen earns $36,000 a year. In addition, she was awarded $8,000 from a Merrill Lynch stock account, $55,000 from a Keogh Plan, which included the court's consideration of Kathleen's tax liability if she were to liquidate the Plan. Kathleen claims that she has incurred approximately $40,000 in attorney fees and that she is unable to meet this obligation. The record indicates the Court was cognizant of the financial resources and burdens of the parties as required under § 40-4-110, MCA. The court concluded that she has enough assets from the distribution of the marital estate and earnings to meet this obligation. We hold that the District Court did not abuse its discretion in failing to award Kathleen attorney fees.

## VI.

Did the District Court Judge commit error when it failed to disqualify or recuse himself from the case due to his participation in pretrial settlement negotiations?

On February 5, 1991, Kathleen, acting pro se, filed a motion for disqualification of the District Judge. Kathleen asserted that the judge was biased because her husband was an attorney of a prestigious law firm and that Judge Holmstrom is a former law partner of an attorney who had previously represented her. A hearing was held before a second District Judge, and the motion was denied.

On appeal, Kathleen declares that Judge Holmstrom should have been disqualified because he conducted pretrial negotiations prior to litigation. In his reply brief, Daniel failed to respond to the

12

allegation. Because Kathleen's basis for disqualification rests on different grounds than those stated at the trial level we hold that the District Court did not commit error in denying the motion for disqualification of Judge Holmstrom.

We affirm and remand to the District Court to consider Kathleen's motion to clarify the amended decree.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

January 21, 1993

CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Kathleen M. Fleury
4732 N. Montana Ave.
Helena, MT 59601

Mark D. Parker
Parker Law Firm
P. O. Box 7212
Billings, MT 59103-7212

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
Deputy