No. 93-110

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

IN RE THE MARRIAGE OF

GARNET SIMMS,

     Petitioner and Respondent,

  and

ARLYN SIMMS,

     **Respondent and Appellant.**

**FILED**

MAR 2 8 1994

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable Jack L. Green, Judge presiding.

COUNSEL OF RECORD:

     For Appellant:

        Julio K. Morales, Morales Law Office, Missoula,
Montana

     For Respondent:

        Neil M. Leitch, Missoula, Montana

Submitted on Briefs:  December 2, 1993

Decided:  March 28, 1994

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

This is an appeal from Findings of Fact, Conclusions of Law, and a subsequent Decree of Dissolution entered by the Fourth Judicial District. Court, Missoula County. We reverse and remand.

The issues on appeal are as follows:

1. Is the oral marital settlement agreement entered into between the parties enforceable?

2. Did the District Court err in distributing the property of the parties?

3. Did the District Court err in awarding maintenance?

4. Did the District Court err in establishing a trust for the minor child's college education?

The petitioner, Garnet Simms (Garnet), and the respondent, Arlyn Simms (Arlyn) were married on August 8, 1959 and had five children. During the pendency of these proceedings, only one of the parties' children, Katy, was a minor.

During the course of the marriage, Arlyn worked outside the home and Garnet worked in the home. The major asset acquired by the parties was a ranch purchased in 1971 from money gifted to Arlyn by his late grandmother. The rest of the assets acquired by Garnet and Arlyn during their marriage consisted of some personal property and various retirement and pension accounts. However, immediately preceding and subsequent to their separation in 1989, Arlyn received substantial inheritances from his family.

Garnet filed for a dissolution of marriage on July 17, 1987; however, the parties apparently reconciled after this pleading was

2

filed.   The parties separated on June 6, 1989, and, on September 13, 1989, Garnet filed an Amended Petition for Dissolution of Marriage.   Arlyn subsequently requested that a settlement conference be conducted and the presiding judge, Jack Green, invited District Judge John Henson to conduct the conference. Judge Henson met with the parties for the settlement conference on December 3, 1990.

Both parties, with counsel, were present at the settlement conference and entered into an oral "marital settlement agreement". This agreement granted joint custody of the minor child with residential custodianship to Garnet and reasonable visitation to Arlyn, ordered Arlyn to pay $250.00 per month in child support until the minor child reached the age of eighteen, awarded Garnet certain personal property and cash in the amount of $62,500.00, awarded Arlyn certain personal property and the family home, and waived Garnet's claim on maintenance.   This agreement was entered on the record and both parties were sworn and testified they agreed to its contents.

Judge Henson approved the agreement and, on March 19, 1991, entered Findings of Fact, Conclusions of Law, and a Decree of Dissolution.   On that same day, Judge Green sent a letter to Judge Henson objecting to the entry of the Decree based on Judge Henson's lack of jurisdiction for anything but the settlement conference itself.

Thereafter, on May 20, 1991, Garnet filed a Motion to Vacate Decree of Dissolution, because Judge Henson was not the presiding

judge in the case. As a result, Judge Henson filed a memorandum on July 15, 1991, declaring that the Decree was a nullity and declining to assume jurisdiction over the case. However, Arlyn continued to pay $250.00 per month in child support, despite the fact that there was no binding order in place requiring him to do so.

Garnet then filed a Motion to Set Aside Property Settlement Agreement and Request for Trial, alleging that there was possible fraud, mistake, misrepresentation, and undue influence. On February 10, 1992, Judge Green granted Garnet's motion, vacated the parties' oral marital settlement agreement, and ordered the case to be set for trial. In the meantime, on June 19, 1992, Garnet moved for temporary maintenance in the amount of $300.00 per month and for an increase in the child support Arlyn had been voluntarily paying from $250.00 per month to $500.00 per month. Due to time constraints, a hearing on these motions was never held. However, the trial in the matter was held on August 10, 1992.

On December 21, 1992, Judge Green entered Findings of Fact and Conclusions of Law and, on December 23, 1992, entered a Decree of Dissolution incorporating those findings and conclusions. The Decree awarded the parties joint custody of the minor child, with Garnet named as the primary residential custodian. Garnet was awarded the family home worth approximately $100,000 and was awarded her personal property worth approximately $23,056.61. Arlyn was awarded some personal property valued at $60,888.00 and the inheritance he received subsequent to the parties' separation.

4

Be received no portion of or credit for the family home. Based on the District Court's finding that Arlyn's total known inheritance was approximately $624,917.00, Arlyn was ordered to pay Garnet $900.00 per month in maintenance until death or marriage. This award was retroactive to June 19, 1992, the date of Garnet's motion for temporary maintenance. In addition, Arlyn was ordered to pay $400.00 per month in child support, also retroactive to the date of the motion for an increase in child support; and to pay all insurance for medical, hospital, ocular, orthodontic, counseling and drug expenses, as well as all medical expenses not covered by insurance. The District Court also ordered Arlyn to set up a trust for the minor child's college education. From the Findings of Fact, Conclusions of Law, and Decree of Dissolution entered by the District Court, Arlyn appeals.

## I - ORAL MARITAL SETTLEMENT AGREEMENT

Arlyn contends that the oral marital settlement agreement stipulated to between the parties is enforceable as a property settlement agreement. We disagree.

Section 40-4-201, MCA, allows only one sort of marital settlement agreement (referred to in the statute and in this opinion as a separation agreement), and that is one which is reduced to writing.

That section provides, in pertinent part:

(1) To promote amicable settlement of disputes between parties to a marriage attendant upon their separation or the dissolution of their marriage, the parties may enter into a _written_ separation agreement containing provisions for disposition of any property owned by either of them, maintenance of either of them, and support, custody, and

5

visitation of their children.

(2) . . . [T]he terms of the separation agreement, except those providing for the support, custody, and visitation of children, are binding upon the court unless it finds, after considering the economic circumstances of the parties and any other relevant evidence produced by the parties, on their own motion or on request of the court, that the separation agreement is unconscionable. (Emphasis added.)

In this case, there was no written separation agreement. While the parties stipulated on the record to settlement and disposition of the various issues mentioned above, including property distribution, debt distribution, maintenance, custody and support, nevertheless their agreement was never reduced to writing as required by the statute. The fact that the parties may orally agree to a certain disposition of the various matters usually covered by a written separation agreement does not negate the requirement that, to be enforceable as a separation agreement contemplated by the statute, the agreement must be reduced to writing.

It is only when the agreement is reduced to writing that the court is statutorily bound by the agreement as to matters involving property distribution and maintenance (assuming the court finds that the agreement on those matters is not unconscionable). Whether the parties have entered into a written agreement or an oral, in-court stipulation, the court is not bound by the parties' determinations on matters of support, custody and visitation but, on those issues, must apply the appropriate statutory criteria. See § 40-4-201(2), MCA, and In re the Marriage of Mager (1990), 241 Mont.78, 785 P.2d 198, wherein we held that the district court did

6

not err in refusing to follow the oral stipulations of the parties, but correctly applied the statutory criteria to issues of custody, visitation and support.

We recently dealt with the matter of the enforceability of oral separation agreements and held that a separation agreement not reduced to writing was not enforceable. In re the Marriage of Hayes (1993), 256 Mont. 266, 846 P.2d 272. In Haves, the terms of the separation agreement were read into the record and the court directed that the terms of the agreement be incorporated into a formal written document. No formal agreement was prepared, but the district court proceeded to enter findings of fact, conclusions of law, and a decree. The husband appealed those findings and conclusions, and argued that the parties had never agreed to the settlement. We stated that:

> The pivotal question here is whether an agreement exists between the parties upon which the court could have based its Findings and Conclusions. The record does not contain a written separation agreement. The record does contain the court's directive to counsel to prepare such a document. It is clear that the court understood the importance of having the agreement reduced to writing. And while we commend the court for its efforts in getting the parties to reach a settlement agreement, such agreement of necessity needs to be specific to avoid the type of controversy presented here.

Haves, 846 P.2d at 273.

Section 40-4-201, MCA, provides that the district court is bound by the parties' separation agreement in matters of property distribution and maintenance if the court finds that the separation agreement is not unconscionable. However, the only separation agreement referred to in the statute is the written separation

7

agreement. Absent a written separation agreement, there is nothing for the district court to review and on which to make a finding regarding conscionability. Under such circumstances, the district court has no alternative but to try the case on the merits and to dispose of the property, maintenance, support, custody and visitation issues on the basis of the applicable statutory criteria, evidenced by the entry of appropriate findings of fact, conclusions of law and judgment. See In re the Marriage of Miller (1989), 238 Mont. 197, 777 P.2d 319. (The district court erred in applying the "not unconscionable" standard where the parties had no agreement on division of property and, instead, should have applied the "equitable apportionment" standard required by § 40-4-202, MCA.)

In that respect, Judge Green was not in error in setting aside the oral separation agreement and in trying the case on the merits.

Notwithstanding, we must, nevertheless, reconcile the statutory requirements and rules above referred to with another principle of law regarding enforcing the stipulations of parties and counsel made on the record during litigation.

Within a few weeks prior to our decision in Haves, we also made it clear that parties are bound by the stipulations made by them, or by their counsel, in open court. In re the Marriage of McLean/Fleury (1993), 257 Mont. 55, 60, 849 P.2d 1012, 1015.

In McLean/Fleury, the parties, prior to trial, attended several hearings and meetings with the district court in an effort to reach an agreement relating to maintenance, child support, and

8

custody. The parties were unable to enter into a separation agreement, however, and, ultimately, the court determined those issues and others after a trial on the merits. During trial, the parties, by counsel, stipulated to certain matters regarding custody. On appeal, the wife claimed that her counsel's stipulation was made without her knowledge or consent, notwithstanding that the record showed that the matters stipulated to were in open court and with both parties in attendance. McLean/Fleury, 849 P.2d at 1015.

In response to the wife's claim, we stated:

> Section 40-4-201(1), MCA, allows the parties to enter into agreements regarding support, custody, and visitation of the children. We have held that parties are bound by the stipulations made by their counsel in open court. Daniels v. Dean (Mont. 1992), 833 P.2d 1078, 1081, 49 St. Rep. 535, 537; Section 37-61-401, MCA. We hold that the District Court did not err in awarding joint custody to both parties.

McLean/Fleury, 849 P.2d at 1015.

While in that case, we found no abuse of discretion in the district court holding the parties to their in-court stipulations regarding matters of custody, we, nevertheless, hasten to reaffirm what is obvious from the plain language of § 40-4-201(2), MCA, and our decision in Mager: in matters of custody, support, and visitation, the district court is not bound by the parties' oral or written agreements but, in those matters, is required to apply the applicable statutory criteria. Mager, 785 P.2d at 200.

In the instant case, Arlyn's counsel recited the terms of the separation agreement into the record. Those terms included ones addressing custody, support, property and debt distribution,

9

maintenance, and **Arlyn's** inheritance. Garnet's counsel stipulated that the recited terms were correct, and both parties were then sworn. The following exchange took place on the record between the District Judge and Garnet:

> The Court: Now, you have heard [Arlyn's counsel] recite this settlement agreement to which your counsel has stipulated. And you should understand that all this is being taken down here and you are going to be bound by it. Do you understand that?
>
> Mrs. Simms: Yeah.
>
> The Court: Now, in light of the settlement agreement, do you have full knowledge of the value of all the assets of the marriage and the amount of the debts and so forth?
>
> Mrs. Simms: Yes.
>
> The Court: At this time do you agree to this as a full and final settlement?
>
> Mrs. Simms: Yes.

The following exchange took place on the record between the District Judge and Arlyn:

> The Court: Now, you do have full knowledge of the assets of the **marriage** and the debts of the marriage; is that correct?
>
> Mr. Simms: Yes.
>
> The Court: You do understand that all this is being taken down and if you agree to it you will be bound by this agreement?
>
> Mr. Simms: Yes, sir.
>
> The Court: Do you agree to this as a full and final settlement?
>
> Mr. Simms: Yes, Your Honor.

While the holding of <u>Haves</u> regarding the necessity for written settlement agreements and the holding of <u>McLean/Fleury</u> regarding

the binding effect of oral, on-record stipulations appear to conflict, in actuality, they do not.

Reading together and harmonizing the requirements of § 40-4-201, MCA, and our decisions in <u>Miller</u>, <u>Mager</u>, <u>McLean/Fleury</u>, and <u>Haves</u>, the following rules emerge.

A.   LEGAL EFFECT OF STIPULATIONS AND AGREEMENTS

A party is bound by and may not contravene the stipulations and agreements he, she, or counsel, make on the record.

In the case of stipulations and agreements (whether oral or written) regarding custody, support and visitation, those are not binding upon the district court: the court must decide those issues on the basis of the applicable statutory criteria.

In the case of stipulations and agreements regarding the division of marital property and maintenance, those agreements, to be binding upon the district court, must be reduced to writing and must be found by the court to be not unconscionable.   If the separation agreement is not reduced to writing, there is nothing for the district court to review, and the court cannot make a finding of conscionability.   Under those circumstances, the court must then proceed to a trial on the merits, and in disposing of the property division and maintenance issues (and any other issues regarding custody, support and visitation), the court must apply the applicable statutory criteria and enter appropriate findings of fact, conclusions of law and judgment.

In short, in a marriage dissolution case, the parties, as between themselves, are bound by their written agreements found by

11

the court not to be unconscionable and by their on-record oral stipulations whether those agreements and stipulations concern matters of property division, maintenance, custody, support and visitation.  The district court, however, is not bound by the parties' oral or written agreements or stipulations in matters of custody, support and visitation (the applicable statutory criteria always being paramount), and is bound on matters of property division and maintenance only to the extent that the parties' agreement is reduced to writing and is found, after review, to be not unconscionable.

B.    USE BY COURT OF STIPULATIONS AND AGREEMENTS

Finally, there remains the matter of how, if at all, the district court is to utilize the parties oral, on-record stipulations and agreements when there is no written separation agreement.  We conclude that in matters of property division and maintenance the parties' oral, on-record stipulations should, to the extent possible, form the evidentiary base upon which the district court applies the statutory criteria.  Since the court's decision must be based upon those criteria, the court is not precluded from ordering and considering, in its discretion, such additional evidence as may be necessary to properly apply those statutory criteria, nor are the parties precluded from offering evidence on matters and issues to which there are no stipulations. Nevertheless, to the extent that the court is able to apply the statutory criteria while, at the same time, holding the parties to their on-record stipulations and agreements, it should do so.

In matters of custody, visitation and support, the court's primary obligation is to decide those issues on the basis of the applicable statutory criteria regardless of the written agreements or on-record stipulations of the parties. The district court must order and consider whatever evidence, in its discretion, it requires to properly make its decision in accordance with the mandates of the applicable statutes, and the parties may offer evidence on matters and issues to which there are no stipulations. Again, however, to the extent that the court is able to correctly apply those statutory requirements while, at the same time, holding the parties to their on-record stipulations and written agreements, it should do so.

Applying the above rules to the instant case, we hold that Judge Green was not in error in proceeding to trial on the various matters at issue, given the parties' failure to reduce their stipulated agreements to writing. Further, the District Court was, as stated above, required to dispose of all contested issues on the basis of the statutory criteria applicable to each, while, to the extent possible,. holding the parties to their on-record stipulations and agreements.

In that regard, it appears that the District Court ignored or rejected the parties' on-record stipulations and agreements. Under the rules set forth above, the court should have considered those, and should have held the parties to their stipulations and agreements to the extent that was possible and consistent with the court's paramount duty to apply the appropriate statutory criteria

13

in deciding the various property division, maintenance and support matters as issue.

Furthermore, the matter of the parties' on-record stipulations and agreements aside, the District Court failed to properly apply the applicable statutory criteria to the issues of property division, maintenance and support in this case.

By reason of the District Court's failure in the foregoing respects, we reverse and, in so doing, discuss the following issues for the guidance of the court on remand.

## II — PROPERTY DISTRIBUTION

The distribution of the marital estate is governed by § 40-4-202, MCA, which provides, in pertinent part:

> (1) In a proceeding for dissolution of a marriage . . . the court, without regard to marital misconduct, shall . . . finally equitably apportion between the parties the property and assets belonging to either or both, however and whenever acquired and whether the title thereto is in the name of the husband or wife or both. . . .

This statute vests the district court with broad discretion to apportion the marital estate in a manner which is equitable to each party under the circumstances. In re the Marriage of Zander (1993), ___ Mont. ___, 864 P.2d 1225, 1230.

In this case, the District Court awarded Garnet the family home worth approximately $100,000 and personal property worth approximately $23,056.61. Arlyn was awarded personal property valued at $60,888.00. Arlyn received no credit for or portion of the family home, despite the fact that his grandmother is the person who gave the parties the funds to purchase the home. We note that, when dividing property acquired by gift, bequest,

14

devise, or descent, the court must consider the contributions of the other spouse to the marriage, including:

    (a) the nonmonetary contribution of a homemaker:

    (b) the extent to which such contributions have facilitated the maintenance of this property; and

    **(c)** whether or not the property division serves as an alternative to maintenance arrangements.

Section **40-4-202(1),** MCA.

In this case, there is no question that Garnet contributed to the maintenance of the family home which was acquired through a gift from Arlyn's grandmother. However, it is equally clear that the District Court failed to give appropriate consideration to the statutory factors when it awarded Garnet the entire value of the major marital asset simply because of **Arlyn's** receipt of a substantial, post-separation inheritance -- an inheritance to which there is no evidence that Garnet contributed. We have required in prior cases that the district court give appropriate consideration to the source of the property in dividing the marital estate. <u>See</u> In re the Marriage of Summerfelt (1984), 212 Mont. 332, 688 P.2d 8. We have also held that, if the contributions of the non-owning spouse have not facilitated the maintenance of property brought into the marriage by the other spouse, the district court may properly exclude that property from the marital estate. In re the Marriage of Gallagher (1991), 248 Mont. 100, 103, 809 P.2d 579, 581. Here, the District Court's award of the entire value of the marital home to Garnet without credit to Arlyn was clearly an abuse of discretion. We hold that the District Court erred in failing to

15

award Arlyn any credit for or portion of the family home merely on the basis of his receipt of the post-separation inheritance, and we reverse and remand for further consideration of the property distribution in this case.

The District Court made other findings which are erroneous and not supported by the evidence. However, because we are reversing and remanding on the issue of property division, we need not address those other findings.

### III – AWARD OF MAINTENANCE

In considering the award of maintenance, this Court will not reverse a district court's award of maintenance unless the findings of fact are clearly erroneous. Zander, 864 P.2d at 1231. An award of maintenance is governed by § 40-4-203, MCA, and is dependent upon a finding that Garnet lacks sufficient property to provide for her reasonable needs and is unable to support herself through appropriate employment. See Zander, 864 P.2d at 1231.

In this case, the District Court found that Garnet's monthly living expenses totaled $1,458.00, which included a rent expense of $460.00. The District Court also found that Garnet earned an average take-home pay of approximately $916.00 per month (although Garnet testified the amount was $960.00), thereby leaving a deficit of $542.00 per month. The court then proceeded to impose a $400.00 per month child support obligation, which reduced the deficit to $142.00 per month, and imposed a maintenance obligation of $900.00 per month, which gave Garnet a surplusage of $758.00 per month. In addition, the District Court awarded Garnet the family home, which

16

has no debt obligation, but did not deduct the $460.00 per month rent expense from Garnet's budgeted monthly living expenses. When this amount is calculated, Garnet had a surplus of $1,218.00 per month under the District Court's findings.

In addition, Garnet works only ten months out of the year and voluntarily does not seek employment the other two months out of the year. Apparently, the District Court did not consider Garnet's ability to support herself through appropriate employment when considering the award of maintenance.

Again, it is clear that the District Court considered Arlyn's post-separation inheritance by granting Garnet the excessive award of maintenance. In fact, the District Court found that Garnet "need[s] a substantial share of her husband's assets so she can live comfortably." We hold that these findings are clearly erroneous. We reverse and remand the issue of maintenance for review, in light of our holding regarding the division of the marital estate and for application of the statutory criteria.

IV - TRUST FOR MINOR CHILD'S COLLEGE EDUCATION

Finally, the District Court erred in setting up a trust fund for the minor child's college education.

The District Court found that it had "the power to supplement the child support for the college education of the parties' minor child by setting aside a portion of Respondent's estate in a trust for the child's college education." Montana law allows the establishment of a trust for the support of a child who is a minor, dependent, or incompetent. Section 40-4-202(2), MCA. However,

17

there is no provision for creating a trust for a child after that child reaches majority, unless the child is dependent or incompetent. In re the Marriage of Alt (1985), 218 Mont. 327, 335, 708 P.2d 258, 262. The District Court may not create a trust to support a non-dependent, competent child after the parent's obligation of support has ended. Alt, 708 P.2d at 262. Therefore, we hold that the District Court abused its discretion and violated Montana law in imposing the trust obligation at issue.

We reverse and remand for further proceedings and for the entry of new findings of fact, conclusions of law and judgment consistent with this opinion.

_____
                                                Justice

We Concur:


_____
        Chief Justice



_____


_____
        Justices

Justice Karla M. Gray, dissenting.

I must respectfully dissent from the Court's opinion on issue one, relating to the enforceability of the parties' settlement agreement.

It is my view that the settlement agreement reached by Garnet and Arlyn Simms is enforceable insofar as it relates to the marital property and maintenance. The Court approaches this settlement agreement as though it were a separation agreement under § 40-4-201, MCA, between parties to a marital dissolution. If I shared that view, I would agree that the agreement did not meet the requirement of § 40-4-201, MCA, that it be in writing and, therefore, would conclude that it was not enforceable.

I see this agreement differently, however. This was an agreement which resulted from a settlement conference scheduled and presided over by the District Court. As a result of that conference, the parties agreed to a specific distribution of the marital assets, including a substantial cash payment toward equalizing the property distribution and in lieu of maintenance. The contents of the settlement agreement were recited on the record. The parties were then sworn and advised by the court that the agreement would be binding on them, testified that they had full knowledge of the value of all the assets and liabilities of the marriage, and agreed to the recited terms as a full and final settlement. The agreement should be enforced.

The Court suggests that the only enforceable "settlement

19

agreement" in a marital action is one which meets the requirements of § 40-4-201, MCA. In my view, the statute does not support such an interpretation. The statute merely provides that parties to a marital separation or dissolution action may enter into a written separation agreement which, insofar at it relates to property distribution and is not unconscionable, will be binding on the court. The statute does not state that no other kind of settlement agreement is enforceable in a marital action: nor is such a conclusion sound public policy.

Faced with an ever-increasing caseload and limited resources, the district courts of Montana undertake a variety of appropriate methods to control litigation, expedite cases, and clear their dockets. One of the most productive of such methods is the increasing use by the courts of various settlement procedures in all manner of civil cases, including settlement conferences presided over by district judges. Settlement conferences can achieve mutually acceptable results for the parties at a significantly decreased financial cost and in much less time than proceeding through costly, time-consuming and emotionally draining trials. Correspondingly, settlement conferences can clear the courts' dockets for those cases which ultimately must proceed to trial.

The sheer number of marital dissolution cases in the district courts of Montana makes those cases particularly appropriate for the use of settlement conferences. Too, the emotional nature of the disputes between the parties can sometimes be put into a more

20

objective framework during a judicially conducted settlement conference. I believe the district courts should be recognized and applauded for their efforts in conducting settlement conferences and encouraged to keep up the good work.

The Court's result here does just the opposite. It essentially tells the district courts not to bother with settlement conferences in marital cases unless they also put the parties to the extra time, expense and aggravation of preparing written documents. The Court apparently does not find a specific agreement, reached as a result of a court-conducted settlement conference, recited on the record, and accepted by both parties in sworn testimony a suitable substitute for a written separation agreement under § 40-4-201, MCA. I disagree.

Nor am I persuaded that _Haves_ has any applicability here. e facts and the record before us in _Haves_ differed significantly from the present case. In _Haves_, the court encouraged the parties to attempt to reach settlement. At the end of lengthy negotiations, the parties reported to the court that they believed settlement had been reached and the purported terms of the settlement were recited into the record. The terms were murky, at very best, containing such statements as We can't vouch for that to be sure but we believe that's a fairly accurate representation;" the terms also indicate a clear lack of knowledge about such an important element of the marital assets as the parties' separate retirement entitlements. As a result, the court properly required the parties to submit the agreement in written form but no written agreement

27

was ever submitted. Notwithstanding the absence of the written agreement, the court proceeded to enter findings, conclusions and a decree. The husband appealed.

The Court states here that in Haves we held that a settlement agreement not reduced to writing is not enforceable. I disagree with that interpretation. The question in Haves, as the Court correctly states, was whether the district court erred in determining that both parties had agreed to a property settlement and in basing its findings and conclusions on that agreement. While we noted that no written separation agreement was submitted, we did not hold that no other type of settlement agreement was enforceable. We recognized that a settlement agreement "of necessity needs to be specific to avoid the type of controversy presented here." Haves, 846 P.2d at 273. As noted above, the Haves agreement was totally lacking in such specificity. The murkiness and lack of specific agreement about specific property is what prompted our decision in Haves that the parties had not reached an agreement on which the court could act, not the absence of a written agreement.

The agreement recited into the record here and agreed to as a full and final settlement by both parties in sworn testimony is very different from that in Haves. Here, the property and maintenance-related terms of the settlement agreement were as follows: that Garnet would receive the money market account with Montana Bank, the 1986 Buick equity, the personal property in her possession, the public employees retirement fund, the IRA Pioneer

22

mutual fund, the **Bateman Eicher** money market fund, the Ford Motor Company shares and the **Phillip** Morris Company shares. In addition, Garnet was to receive, **"in** equalization of property and in lieu of any maintenance," $62,500 in cash, to be paid within sixty days. All of this represented a **"full** and final settlement of any and all property which [Garnet] may have a claim on, including any property . . . [Arlyn] may have inherited . . . **."**

Here, the terms of the agreement were clear and there was no order from the court to reduce them to writing. Indeed, given the clarity of the agreement's terms, such an order was unnecessary. The agreement, together with the parties' testimony regarding their knowledge of all marital assets and their acceptance of the terms, provided a sufficient basis for the court to accept and enforce the agreement. This Court should do the same.

Because it is my view that the settlement agreement is enforceable, I would not reach issues two and three. I do, however, concur in the Court's rationale and result on those issues. I also concur in the Court's opinion on issue four.

_____
Justice

Justice John Conway Harrison joins in the foregoing dissent of Justice **Karla** M. Gray.

_____
Justice

23

Justice Fred J. Weber concurs and dissents as follows:

I concur in the majority opinion with regard to Issue I--Is the oral marital settlement agreement entered into between the parties enforceable, and Issue IV--Did the District Court err in establishing a trust for the minor child's college education? I dissent from Issues II and III.

## II - PROPERTY DISTRIBUTION

In reviewing the property distribution as well as the award of maintenance, I find it important to consider the District Court's findings and conclusions which are summarized as follows in pertinent part:

At the time of hearing Garnet was 52 years old and Arlyn was 55. Both are in good physical health. Garnet is a high school graduate with one year of business school and she completed a word processing class in 1986-87. She currently is employed ten months out of the year as a secretary for the Arlee School District where she earns $9.30 an hour. She has been a homemaker for 33 years. She anticipates minimal inheritance from her parents. Arlyn is a high school graduate who has spent the majority of his life as an operator of heavy equipment and has two years of college. He operates a small cattle ranch at the family home in Arlee. Since the death of his parents he has quit his employment as a heavy equipment operator and spends most of his time at rodeos and doing as he pleases. His total known inheritance is approximately $624,917. It may be greater with additional payments to be received from his father's ranch. In finding of fact IX, the

24

District Court set forth in detail all of the assets accumulated by both parties during their marriage. Included in this are the following with regard to inheritance on the part of Arlyn:

Inheritance from respondent's
(Arlyn's) mother as of December 1989 — $178,500

Certificates of deposit from
respondent's grandmother as of December 1989 — 78,124

Known inheritance from father's estate 368,293

Balance owed on contract due from
sale of father's land to Simontons
& Murdocks value unknown

As a result the District Court gave the total approximate value of Arlyn's assets at $785,805.

The court determined Garnet's monthly living expenses to be $1458. As pointed out in the majority opinion, no deduction was made for the $460 rent figure included in that total. In finding of fact XI the District Court found that Garnet has accumulated only $7291 in her retirement pension fund and that she will need a substantial share of Arlyn's assets to live comfortably as she gets older; she has little saved for her retirement because of the thirty-plus years she spent working as a homemaker for her husband and five children. She has had to deplete her savings account, money market account and stocks to provide for her basic daily needs. Arlyn has retained the marital home and surrounding acreage as his residence. Garnet has no real property and must pay rent. The District Court found that Garnet "lacks sufficient property to provide for her reasonable needs, and she is unable to support herself through appropriate employment." As to Arlyn, the court

25

found that he could afford to retire because of "the approximate $624,917 plus inheritance money he has received" and because his needs are much less than his total assets and he is capable of providing Garnet with a greater proportion of marital property and maintenance.

In finding of fact XII the court found that after thirty-three years of marriage, raising five children and providing for her husband's needs, Garnet's contributions as a homemaker were extensive indeed and that her contributions exceeded the call of duty when she put up with an enormous amount of mental and physical abuse from Arlyn. She maintained the household, cared for the children and was the family's provider for domestic chores. Since the marital home was a working livestock ranch, she was required to nurse sick calves, vaccinate cattle and help pull calves. She is a hard-working woman who took responsibilities seriously and everything she did served to facilitate the maintenance of the family and the property. Arlyn was a hard-working man who provided for the needs of his family and ran a small marital cattle operation and did the chores and worked on the machinery and kept the ranch going. His non-monetary contributions are less than Garnet's because he did not provide for the care of the children as did she, nor did he do as much around the family home. However, Arlyn's efforts and money received from his family did provide a very good standard of living for his family.

In finding of fact XIII the court concluded that Garnet should be awarded the family home in Arlee worth $100,000 and that Arlyn

should receive all of his assets accumulated during the course of the marriage currently in his possession less only the family home. This would then give assets to Garnet of $123,056 and assets to Arlyn of $685,805.

In finding of fact XIV, the District Court found that Garnet's net available resources totaled $11,000 per year. As to Arlyn, the court assumed that if he received a rate of 8-10 percent interest on his assets, his annual income would be approximately $40,000. From the tables the District Court computed a monthly support obligation of $154 per month for Garnet and $560 for Arlyn. The court then concluded that an appropriate child support payment of $400 per month was not unreasonable and that it was fair and equitable to require Arlyn to pay $400 per month for Katy's support. There is no appeal from this determination.

In finding of fact XV, the court pointed out that with Garnet's net available resources of $916 per month, she lacks sufficient property to provide for her reasonable needs and is unable to support herself through appropriate employment. The court further determined that if a cash settlement is not awarded, she should receive a maintenance award in the amount of $900 per month. The maintenance amount would provide her with $10,800 per year which added to her wages of $11,000 would provide her with $21,800 per year which would provide for her reasonable needs. The court further pointed out that after thirty-three years of marriage she is entitled to maintenance because of the long duration of the marriage and being 52 years of age, although she is not elderly,

27

she is at an age where it is difficult to begin training for a **better** paying job.

While the majority opinion refers to § 40-4-202, MCA, it concludes it is clear that the District Court failed to give appropriate consideration to the statutory factors when it awarded Garnet the entire value of the major marital asset (the family home) simply because of Arlyn's receipt of a substantial post-separation inheritance. The majority states:

> Here, the District Court's award of the entire value of the marital home to Garnet without credit to Arlyn was clearly an abuse of discretion. We hold that the District Court erred in failing to award Arlyn any credit for or portion of the family home merely on the basis of his receipt of the post-separation inheritance, and we reverse and remand for further consideration of the property distribution in this case.

I disagree with the majority's conclusion and holding. I conclude that the majority has failed to consider all of the appropriate code provisions and instead has focused on one portion only of the code. Following are the pertinent provisions of § 40-4-202, MCA:

> Division of property. (1) In a proceeding for dissolution of a marriage, . . . the court, without regard to marital misconduct, shall . . . finally equitably apportion between the parties the property and assets belonging to either or bo-th, however and whenever acquired and whether the title thereto is in the name of the husband or wife or both. . . . In dividing property acquired prior to the marriage; property acquired by gift, bequest, devise, or descent; property acquired in exchange for property acquired before the marriage or in exchange for property acquired by gift, bequest, devise, or descent: . . . the court shall consider those contributions of the other spouse to the marriage, including:
>
> (a) the nonmonetary contribution of a homemaker;
>
> (b) the extent to which such contributions have facilitated the maintenance of this property; and

28

(c) whether or not the property division serves as an alternative to maintenance arrangements.

The essence of the conclusions and holding of the majority is that the District Court improperly awarded the $100,000 home to Garnet because of Arlyn's receipt of a substantial post-separation inheritance; that the court erred in failing to award Arlyn any credit in the family home merely because of his receipt of such post-separation inheritance: and as a result, the District Court's award of the entire $100,000 value of the marital home to Garnet was an abuse of discretion. I disagree with those conclusions and holdings. In contrast, I believe that the above quoted § 40-4-202(1), MCA, requires that the court consider all properties, including post-separation inheritances.

The first several sentences of subsection (1) of § 40-4-202, MCA, require the District Court to "equitably apportion" between the parties the property belonging to Garnet and Arlyn or either of them, however and whenever acquired, and whether title is in one or both. Clearly that portion of the statute affords no basis to suggest that property acquired by post-separation inheritance is not to be equitably apportioned between the parties.

In a similar manner, the subsequent portions of § 40-4-202(1), MCA, in this case require the District Court to consider the contributions of Garnet to the marriage. Note those contributions are not limited to some form of monetary contribution. The contributions are required by statute to include the nonmonetary contributions of Garnet; the extent to which such contributions have facilitated the maintenance of the property--note this is not

29

even stated in the statute to be limited to monetary contributions but can include other types of contributions--and, finally, the court must consider whether or not the property division to Garnet served as an alternative to maintenance arrangements. The majority has apparently concluded that it was totally inappropriate to consider the substantial post-separation inheritance received by Arlyn. I do not find that the statute contains any basis for such a conclusion.

As above set forth, the statute requires consideration of contributions of Garnet "to the marriage" which is not limited to monetary contributions. In a similar manner, the statute expressly says that the district court shall consider the nonmonetary contributions of Garnet. Last, the court must consider whether the property division serves as an alternative to some part of the maintenance arrangements. The majority has disregarded all of the statutory provisions and focused on one aspect only--the separation of the parties which has led the majority to conclude there is no right to share on the part of Garnet to inheritance received after the separation of Garnet and Arlyn. I can only reemphasize that the opening provisions of § 40-4-202, MCA, require the District Court to equitably apportion the property and assets "however and whenever acquired." I find no basis for the narrow holding on the part of the majority.

Under the statutory requirement that the District Court is to consider the contributions to the marriage on the part of Garnet, including her nonmonetary contributions, it is important to

30

consider the extensive findings of fact by the District Court which state that Garnet has devoted 33 years of marriage to the raising of five children and providing for Arlyn's needs, and that her contributions exceeded the call of duty. The District Court further pointed out that Garnet has accumulated very little in her retirement pension fund and emphasized the limited nature of her education and her limited capacity to retrain at her age.

The District Court concluded that it was reasonable to award the family home worth $100,000 to Garnet (keeping in mind that the ranch awarded to Arlyn also has a family home). Following the same findings of fact,. the court concluded that it was reasonable to award Garnet a maintenance award of $900 per month--pointing out that the maintenance would provide $10,800 per year which added to her wages of $11,000 would provide her with $21,800 and which would provide for her reasonable needs. I suggest the making of the foregoing conclusions with regard to the family home are clearly within the discretion granted to the District Court under the express provisions of § 40-4-202(1), MCA. I conclude there was substantial evidence to support the District Court's division of property and in particular the award of the $100,000 family home to Garnet. I would affirm on this issue.

## III - AWARD OF MAINTENANCE

In the discussion of the maintenance award of $900 per month to Garnet, the majority states:

> Again, it is clear that the District Court considered Arlyn's post-separation inheritance by granting Garnet the excessive award of maintenance. In fact, the District Court found that Garnet "need[s] a

31

substantial share of her husband's assets so she can live comfortably." We hold that these findings are clearly erroneous. We reverse and remand the issue of maintenance for review, in light of our holding regarding the division of the marital estate and for application of the statutory criteria.

The essence of the foregoing holding is that the District Court erroneously considered the post-separation inheritance in making an award of maintenance. I do not agree with that holding.

Section 40-4-203, MCA, provides in pertinent part:

Maintenance. (1) In a proceeding for dissolution of marriage . . . the court may grant a maintenance order for either spouse only if it finds that the spouse seeking maintenance:
     (a) lacks sufficient property to provide for his reasonable needs: and
     (b) is unable to support himself through appropriate employment . . .
     (2) The maintenance order shall be in such amounts and for such periods of time as the court deems just . . . and after considering all relevant facts including:
     (a) the financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;
     (b) the time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment:
     (c) the standard of living established during the marriage:
     (d) the duration of the marriage:
     (e) the age and the physical and emotional condition of the spouse seeking maintenance; and
     (f) the ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance.

The majority suggests that it was improper to consider Arlyn's post-separation inheritance. Under the maintenance statute the court was required to consider all relevant facts with regard to maintenance including the financial resources of the party seeking

32

fact to which reference has previously been made. As an example, I would emphasize that the $1458 expenses allocated to Garnet were found by the District Court to be based on a "bare and frugal lifestyle" which she has lived since the date of separation. Under the statute, Garnet is entitled to sufficient property to provide for her "reasonable" needs.

I would therefore remand on the issue of the maintenance award, but I disagree with the apparent majority holding that in that remand, the District Court is not allowed to consider inherited property or post-separation inherited property. On remand I would require that the District Court consider all of the elements of § 40-4-203, MCA, which are pertinent to this case, including the facts as previously found by the District Court.

_____
Justice

Chief Justice J.A.. Turnage concurs in the foregoing concurrence and dissent.

_____
Chief Justice

34