NO.   91-255

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

IN RE THE MARRIAGE OF

BENNIE LEE DANELSON,

      Petitioner and Appellant,

  and

CLO ANN DANELSON,

      Respond nt  nd Respondent.

FILED

JUL - 9 1992

CLE... ... ....... COURT
STATE OF MONTANA

APPEAL FROM:  District Court of the Fifteenth Judicial District,
In and for the County of Daniels,
The Honorable M. James Sorte, Judge presiding.


COUNSEL  F RE 3RD:

      For Appellant:

          Richard A. Simonton, Simonton, Howe & Schneider,
          Glendive, Montana

      For Respondent:

          Jerrold L. Nye, Nye & Meyer, Billings, Montana


          Submitted on Briefs:  December 12, 1991

                Decided:  July 9, 1992

Filed:

                 Clerk

Justice William E. Hunt, Sr., delivered the opinion of the Court.

Appellant Bennie Lee Danelson brought a petition for dissolution of marriage on September 24, 1987. On November 18, 1988, following a bench trial, the District Court of the Fifteenth Judicial District, Daniels County, entered a decree of dissolution. Respondent Clo Ann Danelson then filed a motion for a new trial which was granted on January 11, 1989, over appellant's objection. Following the new trial, the District Court entered a second decree on March 13, 1991. The second decree was more favorable to respondent than the first. Appellant brought this appeal attacking both the order granting the new trial and the decree resulting from the new trial. We affirm in part and reverse in part.

We phrase the issues before the Court as follows:

1. Did the District Court err in granting respondent a new trial?

2. Did the District Court err in its distribution of the marital estate following the second trial?

The parties were married on March 25, 1967. Two children were born to the parties. Neither child custody nor support issues were involved in the second trial and are not at issue on appeal. The issues in the second trial concerned the distribution of the parties' property. Over the 21-year marriage, the parties accumulated a considerable amount of land, farm equipment, and livestock, which were held in two Montana corporations. The marital estate consisted primarily of stock in these two corporations. Each party owned a 50 percent interest in Bennie Lee

2

Danelson, Inc. Additionally, each party owned a **25** percent interest in Lazy D Diamond, Inc., with two other individuals owning the other **50** percent interest.

At the conclusion of the first trial, which was held in October **1988** without a jury, the District Court determined the net worth of Bennie Lee Danelson, Inc., to be **$81,135.** This was discounted by **40** percent, making the final value **$48,681.** The District Court found the net worth of Lazy D Diamond, Inc., to be negative **$550,560.93.** (The court noted that while all four owners of Lazy D Diamond, Inc., personally guaranteed the loans, the other two owners had completed a Chapter **12** bankruptcy and **no** longer had any liability on their individual guarantees for the corporate loans.) Combining these two figures the court found the marital estate of the parties was a negative **$501,879.**

Finding no net marital estate to be divided, the court determined that it was not in the best interests of the parties to allow the ownership of the corporations to continue as it was. The court ordered respondent to transfer all of her shares of stock in the corporations to appellant. Appellant was to assume all liabilities of both corporations and was to hold respondent harmless and indemnify her from the liabilities and creditors of both corporations. Appellant was ordered to pay maintenance in the amount of **$350** per month for **68** months, and to pay **$10,000** to respondent for her to purchase dependable transportation. Respondent, after a lengthy marriage, did not receive any other property from the marital estate.

Respondent filed a motion for a new trial or in the alternative an amended judgment. Over appellant's objection, the District Court granted a new trial in January 1989. In light of the order for a second trial, respondent did not turn over her shares in the corporations as ordered in the first trial. In January 1991, a second nonjury trial was held regarding the issues of maintenance and property distribution. At the conclusion of the second trial, the judge issued findings of fact and conclusions of law which varied from the results reached in the first trial.

Following the second trial, the District Court determined that the net worth of Bennie Lee Danelson, Inc., was $132,615. The court further determined that the net marital estate in Bennie Lee Danelson, Inc., should be divided equally between the parties. To this end, the court ordered that appellant pay respondent $10,000 within 30 days of the decree. Additionally, appellant was to pay the remainder over a seven-year period at ten percent interest in equal annual payments of $11,197.80. Respondent was to hold her shares in the stock of Bennie Lee Danelson, Inc., as security for the payment of her share of the corporate net worth. As long as the payments were current, the shares held by respondent would be nonvoting shares and she would not participate in corporate affairs. Once the final payment was made, respondent was to turn over to appellant all of her shares in Bennie Lee Danelson, Inc.

In the first trial, the District Court ordered respondent to turn over her shares of Lazy D Diamond, Inc., to appellant. In return, appellant was to assume all the liabilities of the

4

corporation and hold respondent harmless for these debts. Because the District Court granted a new trial, this order was not carried out, and at the time of the second trial respondent still held her shares in the corporation. In the second trial, the District Court determined that appellant did not have the means to hold respondent harmless in the event she turned her shares in the corporation over to appellant. Therefore, the District Court determined that respondent would keep her shares. Respondent would have the right to her share of the corporate earnings and would be liable for the corporate liabilities. Maintenance was to remain as initially determined in the first trial. Appellant brought this appeal attacking both the order granting the new trial and the findings and conclusions of the District Court following the second trial.

I

Did the District Court abuse its discretion in granting respondent a new trial?

The decision to grant a new trial is within the sound discretion of the district court and will not be disturbed by this Court absent a manifest abuse of discretion. Larson v. X-Mart Corp. (1990), 241 Mont. 428, 430-31, 787 P.2d 361, 362. Appellant presents three arguments in support of his contention that it was an abuse of discretion for the District Court to grant respondent a new trial. First, appellant argues that respondent was incorrectly allowed to argue matters additional to those initially raised in the motion for a new trial. Second, appellant alleges the District Court erred in not ruling on his motion to reconsider

the order granting the new trial. Finally, in granting the new trial, appellant contends that the District Court did not state with particularity in the order the reasons for granting the new trial.

All the grounds argued by appellant in support of his contention that the District Court abused its discretion in granting a new trial must fail. Appellant failed to object or bring an appeal in a timely fashion.

Appellant initially contends that respondent's second counsel was allowed to present arguments by way of an affidavit and a brief in support of the original motion for a new trial which went beyond the grounds relied on in the original motion. However, appellant had the opportunity to object to these arguments but failed to do so. Appellant filed both a reply brief and a supplemental reply brief in opposition to respondent's motion for a new trial. After reviewing these briefs it is clear that appellant did not raise this objection. The objection is now raised for the first time on appeal and will not be considered by this Court. In re Marriage of Glass (1985), 215 Mont. **248**, 697 P.2d 96.

Second, appellant alleges the District Court erred in not ruling on his motion to reconsider the order granting the new trial. The District Court entered the order granting the new trial on January 11, 1989. Appellant's motion to reconsider was filed on February 15, 1990, more than a year after the District Court's order granting a new trial. Appellant's motion to reconsider was not timely filed pursuant to the Montana Rules of Civil Procedure.

In any event Rule 60(c), M.R.Civ.P., provides that such a motion is deemed denied if the trial court fails to rule on the motion within 45 days from the time it is filed.

Finally, in granting the new trial, appellant contends the District Court did not state with particularity in the order the reasons for granting the new trial. Rule 59(f), M.R.Civ.P., provides that in granting a new trial the District Court:

> [S]hall specify the grounds therefor with sufficient particularity as to apprise the parties and the appellate court of the rationale underlying the ruling, and this may be done in the body of the order, or in an attached opinion.

The order granting the new trial in this case clearly did not comply with the requirement of Rule 59(f), M.R.Civ.P.

However, despite the fact that Rule 1, M.R.App.P., makes an order granting a new trial immediately appealable to this Court, appellant failed to appeal the District Court's order. Instead, appellant waited until after the second trial, which took place two years after the order granting the new trial, to object to the content of the District Court's order. It is not entirely clear what appellant is requesting that this Court do at this stage, but it appears that appellant is requesting that the matter be remanded to the District Court for a ruling on appellant's motion to reconsider. As previously mentioned, the motion is deemed denied by the trial court's failure to rule on the motion within 45 days. In any event, the question of the propriety of the trial court's order is one which should have been considered earlier and is now rendered moot by the fact that a second trial has already occurred.

The proper procedure would have been to appeal the initial order granting the new trial. This Court could then have remanded to the District Court, directing that an order be entered stating the reasons for granting the new trial. Appellant, if he still objected to the order granting the new trial, could then have appealed the order of the District Court and this Court could have considered the question of whether the District Court abused its discretion in granting the new trial. *See* Shannon v. Hulett **(1983), 205** Mont. **345, 668** P.2d **228;** Campbell v. Johnson **(1990), 246** Mont. **122, 802** P.2d **1262.** Appellant's attempt to now raise this matter for the first time is barred by the doctrine of laches.

II

Did the District Court err in its distribution of the marital estate following the second trial?

Appellant attacks the findings, conclusions, and decree entered by the District Court following the second trial which relate to the distribution of the marital estate. In the past, this Court has employed an abuse of discretion standard in reviewing a lower court's determination of the appropriate division of the marital estate. This Court has recently clarified that our standard of review in regard to the factual findings of the district court relating to the division of marital property is whether the district court's findings are clearly erroneous. In re Marriage of Sacry (Mont. **1992), 49** St. Rep. **452.** Concerning this Court's review of conclusions of law made by a lower court we have stated that "[W]e are not bound by the lower court's conclusions

*8*

and remain free to reach our own." Schaub v. Vita Rich Dairy (1989), 236 Mont. 389, 391, 770 P.2d 522, 523. The basis for simply determining if the lower court's conclusions are correct is that there is no discretion in determining a question of law. The lower court either correctly or incorrectly applies the law. Steer, Inc. v. Department of Revenue (1990), 245 Mont. 470, 803 P.2d 601.

In adopting these standards of review in division of marital property cases, this Court is not in any way discounting the considerable discretionary power that must be exercised by district courts in these cases. The courts are obligated to fashion a distribution which is equitable to each party under the circumstances. In re Marriage of Jones (1987), 229 Mont. 128, 745 P.2d 350; § 40-4-202, MCA. The courts, working in equity, must seek a fair distribution of the marital property using reasonable judgment and relying on common sense. Obtaining this equitable distribution will at times require the lower court to engage in discretionary action which cannot be accurately categorized as either a finding of fact or a conclusion of law. These discretionary judgments made by the trial court are presumed to be correct and will not be disturbed by this Court absent an abuse of discretion by the lower court. Meridian Minerals v. Nicor Minerals, Inc. (1987), 228 Mont. 274, 742 P.2d 456.

In distributing the marital estate following the second trial, the District Court relied primarily on the values of both assets and liabilities as determined at the time of the first trial in

9

1988 when the parties' dissolution of marriage was granted. This procedure was in compliance with the general rule that the proper time for valuing the marital estate is at or near the time of dissolution, unless unique circumstances of the marital relationship exist. In re Marriage of Swanson (1986), 220 Mont. 490, 716 P.2d 219. Appellant alleges it was error for the District Court to reach such varied results in the second trial when the values from the first trial were used.

Following the first trial, the District Court determined that the value of Bennie Lee Danelson, Inc., was $81,135, which was discounted by 40 percent, making the final value $48,681. At the conclusion of the second trial, the value was determined to be $132,615. This variance results from the trial court's inclusion of certain items in determining the net value of Bennie Lee Danelson, Inc., at the second trial. The court included in the marital estate certain premarital property and anticipated expenses which had been excluded at the first trial. Additionally, the court did not discount the value of the marital estate in the second trial.

At the second trial, the District Court properly included the value of certain premarital property of appellant which was previously excluded. The District Court found that the property did not exist in 1938 and that there had been no attempt during the marriage to segregate either the property or the funds from the sale of the property from the marital estate. The property was commingled with and became a part of the marital estate and was

10

properly included as such at the second trial. In re Marriage of Metcalf (1979), 183 Mont. 266, 598 P.2d 1140. The inclusion of the premarital property of appellant was not clearly erroneous.

In the first trial, the District Court excluded from the value of Bennie Lee Danelson, Inc., certain anticipated expenses and short-term debt of appellant. At the second trial, the District Court included the anticipated expenses on the basis that it found the anticipated expenses had been included in the amount previously excluded for short-term debt and had in effect been excluded twice. This finding of the District Court is not clearly erroneous.

After obtaining the net value of Bennie Lee Danelson, Inc., in the first trial the District Court discounted that figure by 40 percent. The District Court refused to discount the net value as determined in the second trial. The District Court found that appellant has had and will continue to have full control over the corporate affairs and that appellant had no intention of selling or otherwise disposing of the corporation. Under these circumstances, the court was not clearly erroneous in not discounting the net value of the corporation as it had in the first trial. In re Marriage of Johnson (1986), 223 Mont. 383, 726 P.2d 332.

The method used by the District Court in the second trial to determine the value of Bennie Lee Danelson, Inc., resulted in a finding that the net value was $132,615. The District Court determined that appellant would keep the property and pay respondent one-half of the net value. Upon payment of the final installment, respondent was to turn over her shares in Bennie Lee

11

Danelson, Inc., to appellant. The District Court's decision to equally divide the value of Bennie Lee Danelson, Inc., between the parties resulted in an equitable division of the property. Appellant was allowed to keep intact the property and continue his ranching business, while respondent received her share of the monetary value of the asset. This decision by the District Court was not an abuse of discretion.

In the first trial, the District Court ordered respondent to turn over her shares of the Lazy D Diamond to appellant. This order was not carried out in light of the District Court's decision to allow a new trial. In the second trial, the District Court determined that appellant did not have the means to hold respondent harmless from their creditors in the event she turned over all her shares in the corporation. The court then determined that respondent would keep her shares, along with the right to corporate earnings and the liability for the corporate debt.

The evidence at trial suggested that since the separation respondent had not participated in the management of the corporation or assisted in paying the corporate liabilities. The testimony at trial further indicated that respondent had possibly even attempted at times to frustrate the operation of the Lazy D Diamond. In light of the acrimonious relationship between the parties, a different method of obtaining an equitable apportionment of the Lazy D Diamond might have been employed by the District Court. However, the District Court was acting well within its

discretion and this Court will not disturb what appears to be an equitable apportionment of the marital asset in question.

Finally, appellant was awarded 25 percent of the 1990 Conservation Reserve Program (CRP) payment, even though she had not participated in the management of the corporation for several years, and the CRP payments were traditionally earmarked to pay certain corporate debts. In this instance, the payment to appellant of a portion of the CRP payment, which was obtained several years after the separation due to the efforts of respondent, effectuates an injustice and is an abuse of discretion. In re Marriage of Wagner (1984), 208 Mont. 369, 679 P.2d 753. We reverse the award of the CRP payment to respondent and affirm as to all other aspects of the District Court's judgment.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

13

July 9, 1992

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:


Richard A. Simonton
Simonton, Howe & Schneider, P.C.
P.O. **Box** 1250
Glendive, MT  59330

Jerrold L. Nye
Nye & Meyer, P.C.
3317 Third Ave. No.
Billings, MT  59101


ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _M. Tudor_
    Deputy