No. 96-118

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997

IN RE MARRIAGE OF

JAMES WARREN DeCOSSE,

        Petitioner and Appellant,

  and

DOROTHY ANN DeCOSSE,

        Respondent, Respondent, and Cross-Appellant.

FILED

APR 15 1997

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Eighteenth Judicial District,
                     In and for the County of Gallatin,
                     The Honorable Thomas A. Olson, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

                Edmund P. Sedivy, Jr.; Sedivy, Bennett & White;
                Bozeman, Montana

        For Respondent:

                Kent M. Kasting; Kasting, Combs & Kauffman;
                Bozeman, Montana

Submitted on Briefs: January 30, 1997

Decided: April 15, 1997

Filed:

_____
Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

James Warren DeCosse filed a petition for dissolution of his marriage to Dorothy Ann DeCosse in the District Court for the Eighteenth Judicial District in Gallatin County. Following a nonjury trial, the District Court entered its decree and judgment, in which it dissolved the parties' marriage and divided their marital assets. James appeals the District Court's valuation of his interest in the business by which he is employed. Dorothy cross-appeals the District Court's refusal to consider her need for maintenance in the future, and the District Court's refusal to award her attorney and expert witness fees. We reverse in part and affirm in part the judgment of the District Court and remand to that court for proceedings consistent with this opinion.

The following issues are presented by the parties:

1. Did the District Court err when it valued James's interest in Gallatin Valley Furniture at $1,060,000 and ordered James to pay Dorothy $522,676 to equalize the marital property distribution?

2. Did the District Court abuse its discretion when it refused to reserve the issue of maintenance for future consideration dependent on Dorothy's health?

3. Did the District Court abuse its discretion when it declined to award Dorothy attorney fees and costs which she incurred responding to James's post-trial motions?

FACTUAL BACKGROUND

Dorothy and James DeCosse were married on July 14, 1973, and separated on May 26, 1993. At the time of their marriage, James was the manager of his father's business,

2

Gallatin Valley Furniture, and owned thirty-five shares of stock in the company. When James's father retired in 1985, Gallatin Valley Furniture entered into a series of redemption agreements with James's father and mother. Pursuant to those agreements, each of James's parents agreed to sell 1,640 shares of stock to the corporation at a price of $232 per share. The total cost was to be paid in installments. Final payment was due by June 28, 2000. In return, the remaining shareholders--who were James, and his sister and brother-in-law, Michelle and Dennis Cattin--agreed to several restrictions, including an agreement that the shareholders would not sell their shares, except to each other, until James's parents were fully paid pursuant to the terms of the redemption agreements. In addition, the remaining shareholders executed irrevocable proxies with which James's parents could liquidate the company in the event of any default in the redemption agreements.

The value of James's parents' stock was determined at the time of redemption by a certified public accountant, Wayne Neil. In valuing the stock, Neil used the income method of valuation, which is recommended by the American Institute of Certified Public Accountants for the valuation of closely held businesses. Pursuant to the income method, Neil weighted the average earnings of Gallatin Valley Furniture for the five years prior to redemption, giving the most recent year the greatest weight. He then applied both a high and low multiple for a return on investment consistent with reports in the National Home Furnishings Association Manual and multiplied it by the weighted average net equity of the business to establish normal earnings. By subtracting the normal earnings figure from the weighted average earnings figure, Neil calculated the excess earnings. Neil then applied a

3

capitalization rate--the rate an investor would expect to receive for his risks in the company-- and using both a low of fifteen percent and a high of twenty percent, produced a value for the goodwill of the company. When Neil added that figure to the total value of the net tangible assets of Gallatin Valley Furniture, he determined a high and low fair market value of the business. To determine the per-share value, he divided those figures by the number of outstanding shares of stock. Neil arrived at the final figure of $232 per share by taking the median of the high and low figures and applying a twenty percent minority shareholder discount.

In 1985, at the time James's parents executed the redemption agreements, James owned 466 shares of Gallatin Valley Furniture stock, and Michelle and Dennis Cattin owned the remaining 466 shares. On June 28, 1985, at the same time the redemption agreement was signed, James, Michelle, and Dennis entered into a shareholders' agreement with Gallatin Valley Furniture. Pursuant to that agreement, James and Dennis were designated "shareholder-employees" and Michelle was designated a "shareholder." The agreement provided that all transfers or other dispositions of corporate stock made during the lifetime or at the death of a shareholder were subject to restriction. Specifically, the agreement provided that if a shareholder-employee attempted a "restrictive transfer" or died, retired, or was disabled, the remaining shareholder-employee was given the first option to purchase the stock for the price and terms set forth in the agreement. The price per share was originally calculated at $230 per share, but the shareholders' agreement provided that the shareholders would review the price each year. In addition, the agreement provided that if the

4

shareholders failed to recalculate the price of the stock on a yearly basis, the corporation's accountant would value the stock pursuant to the same method used to calculate the original stock price. The agreement established fifteen annual installments with an interest rate of ten percent as the terms of any purchase from one shareholder by another.

At each annual shareholders' meeting from 1985 through 1994, Wayne Neil recalculated the fair market value of Gallatin Valley Furniture stock pursuant to the income method of valuation. Each year, the shareholders and directors of the corporation adopted the fair market value calculated by Neil. At their 1994 meeting, which occurred prior to the dissolution proceedings at issue in this case, Neil calculated the fair market value of the stock at $744.85 per share. At that time, James owned 521 shares of Gallatin Valley Furniture stock and Michelle and Dennis owned the remaining 521 shares.

At the dissolution proceedings in October 1994, Wayne Neil testified for James that pursuant to the income valuation method James's share of the stock in Gallatin Valley Furniture was worth $388,066.85 prior to a minority shareholders' discount. However, Dorothy's business valuation expert, Martin Connell, testified that the value of James's one-half interest in Gallatin Valley Furniture ranged from $1,171,026.50 to $1,373,544.00, depending on which of four methods of business valuation were employed. In his final report, Connell valued the business at $2,650,000. Connell therefore determined that James's one-half share was equal to $1,325,000. Connell admitted at trial that he did not take the 1985 restrictive shareholders' agreement into account in determining the fair market value of Gallatin Valley Furniture.

5

On May 9, 1995, the District Court entered its findings of fact and conclusions of law. In its findings regarding James's interest in Gallatin Valley Furniture, the court determined that "[t]he Shareholder's Agreement has no application to these proceedings." The court therefore accepted Connell's valuation of Gallatin Valley Furniture, and held that James's share of the company was $1,325,000 minus twenty percent for minority shareholders' discount and lack of marketability. Accordingly, the court held that James's share of Gallatin Valley Furniture was worth $1,060,000. The court awarded James his share of Gallatin Valley Furniture and ordered James to pay Dorothy the sum of $522,676 to equalize the property distribution. Based on its substantial monetary property cash award to Dorothy, the court determined that Dorothy would not be entitled to maintenance. The court further determined that each party would be responsible for his or her own attorney and expert witness fees.

## ISSUE 1

Did the District Court err when it valued James's interest in Gallatin Valley Furniture at $1,060,000 and ordered James to pay Dorothy $522,676 to equalize the marital property distribution?

This Court reviews the factual findings of a district court relating to the division of marital property to determine whether the court's findings are clearly erroneous. *In re Marriage of Danelson* (1992), 253 Mont. 310, 317, 833 P.2d 215, 219. We review a district court's conclusions of law relating to the division of marital property to determine whether those conclusions are correct. *Marriage of Danelson*, 253 Mont. at 317, 833 P.2d at 219-20.

6

On appeal, James maintains that the District Court's findings of fact regarding the valuation of his interest in Gallatin Valley Furniture are clearly erroneous. Specifically, James asserts that the District Court erred when it refused to apply the 1985 shareholders' agreement in its determination of the fair market value of his shares of stock in the company. James maintains that he has no interest in Gallatin Valley Furniture other than through his stock, which cannot be transferred or sold other than according to the terms of the shareholders' agreement. Because the value of his stock is limited by that agreement to $310,453.48 for his 521 shares, James contends that the District Court's valuation of his interest in the business at $1,060,000 is clearly erroneous.

This Court has addressed the issue of the effect of a restrictive shareholders' agreement on the valuation of an interest in a closely held corporation on two occasions. In *In re Marriage of Jorgensen* (1979), 180 Mont. 294, 590 P.2d 606, we upheld a district court's determination of the fair market value of stock in a closely held corporation at a price fixed by a restrictive shareholders' agreement. We held:

> In considering the range of values which the evidence offered, it is apparent the District Court did not abuse its discretion in fixing the value of the shares at . . . the amount decided upon by all the shareholders. This is especially applicable in view of the fact that any shareholder wishing to transfer the same is presently bound by the terms of the agreement. As long as the agreement is operative no shareholder can go upon the market and obtain more for his shares. Each shareholder is restricted to the price and to the purchasers set forth in the agreement.

*Marriage of Jorgensen*, 180 Mont. at 300, 590 P.2d at 610 (emphasis added). In addition, in *In re Marriage of McLean* (1993), 257 Mont. 55, 61, 849 P.2d 1012, 1015-16, we upheld

a district court's determination that one party's interest in a law firm did not include the value of the goodwill of a partnership interest where that party had entered into a good faith agreement with the law firm to disclaim any interest in that goodwill. In neither case, however, were we faced with the situation, as here, in which the district court did not consider the effect of a negotiated shareholders' agreement on a company's value.

A majority of jurisdictions holds that a restrictive agreement, while not conclusive evidence of the value of an interest in a closely held corporation, is a factor that must be considered by a trial court in the stock valuation process. *See, e.g., In re Marriage of Micalizio* (Cal. Ct. App. 1988), 199 Cal. App. 3d 662, 675-76; *Stearns v. Stearns* (Conn. 1985), 494 A.2d 595, 598; *In re Marriage of Petterson* (Minn. Ct. App. 1985), 366 N.W.2d 685, 688; *Amodio v. Amodio* (N.Y. 1987), 509 N.E.2d 936, 936-37; *Poore v. Poore* (N.C. Ct. App. 1985), 331 S.E.2d 266, 270; *Buckl v. Buckl* (Pa. Super. Ct. 1988), 542 A.2d 65, 70; *Suther v. Suther* (Wash. Ct. App. 1981), 627 P.2d 110, 113. In *Amodio*, the New York Court of Appeals held:

> There is no uniform rule for valuing stock in closely held corporations.
> . . .
>
> . . . Whatever method is used, however, <u>must</u> take into consideration inhibitions on the transfer of the corporate interest resulting from a limited market or contractual provisions. <u>If transfer of the stock of a closely held corporation is restricted by a bona fide buy-sell agreement which predates the marital discord, the price fixed by the agreement, although not conclusive, is a factor which should be considered</u>.

*Amodio*, 509 N.E.2d at 936-37 (citations omitted) (emphasis added). In that case, the New York Court of Appeals held that the trial court properly disregarded the testimony of the

8

plaintiff's expert, who did not consider the restrictions set forth in the shareholders' agreement in his analysis of the value of the corporate stock. Because the only other evidence of the corporation's value was the stock price value set forth in the shareholders' agreement, the New York Court of Appeals held that that value was conclusive as "the only evidence in the record of [the corporation's] actual value." *Amodio*, 509 N.E.2d at 937.

We agree that James's only ownership interest in the Gallatin Valley Furniture business is represented by the stock which has been issued to him. Furthermore, so long as the existing shareholders' agreement is in effect, James cannot transfer his stock for more than the price set forth in that agreement. Therefore, we hold that if the shareholders have employed an accepted method of valuation and there is no evidence that the valuation was undertaken in bad faith or for the purpose of avoiding marital or debtor/creditor responsibilities, there is a presumption that the valuation of stock set forth in a shareholders' agreement is the real value of a shareholder's interest in a closely held corporation.

In this case, Dorothy's expert testified that he did not consider the 1985 shareholders' agreement in any of the four methods he used to calculate the value of James's interest in Gallatin Valley Furniture. Therefore, pursuant to the reasoning of *Amodio*, the only evidence before the District Court of the stock's "actual value" was Neil's valuation in the amount of $310,453.48. That value, negotiated in a good faith arms-length transaction, represents the price to which James would be limited should he attempt to transfer or sell his stock to satisfy the judgment against him. It also represents the amount that would have passed to

9

James's estate had he died while married to Dorothy during that period of valuation. *See Marriage of Jorgensen*, 180 Mont. at 300, 590 P.2d at 610.

Therefore, because the District Court accepted Dorothy's expert's valuation, which was prepared without reference to the 1985 shareholders' agreement, and because the District Court refused to take that agreement into account when it valued James's interest in the business, we hold that the District Court's finding that James's interest in Gallatin Valley Furniture was $1,060,000 is clearly erroneous. We remand this case to the District Court with instructions that James's interest in Gallatin Valley Furniture should be valued at $310,453.48. We further instruct the District Court to equitably divide the parties' property and assets, pursuant to § 40-4-202, MCA, based on this valuation, and to reassess Dorothy's need for maintenance in light of the corrected value of the marital estate and the manner in which it is redivided. Based on our holding that the District Court erred when it valued James's interest in Gallatin Valley Furniture without reference to the pre-existing shareholders' agreement, we do not reach Dorothy's claim on cross-appeal that she is entitled to attorney fees she incurred in connection with this appeal.

## ISSUE 2

Did the District Court abuse its discretion when it refused to reserve the issue of maintenance for future consideration dependent on Dorothy's health?

We review a court's award of maintenance or failure to award maintenance to determine whether the court abused its discretion. *In re Marriage of Smith* (1993), 260 Mont. 533, 535, 861 P.2d 189, 190.

10

The District Court based its decision to deny maintenance on the following finding:

> In view of the substantial assets being received, most of which are income-producing, this is not an appropriate case to award [Dorothy] separate maintenance. The distribution of the property coupled with her earnings, will enable [Dorothy] to maintain a reasonable standard of living. The court declines to keep the issue of future maintenance open, as requested by counsel for [Dorothy].

Although (prior to our decision regarding the valuation of James's business interest), Dorothy did not dispute the court's decision not to award her maintenance, she contends that the District Court erred when it failed to recognize that her ongoing health problems might necessitate a need for maintenance in the future. Dorothy maintains that, based on her health problems--which include neuromuscular damage, back problems, a benign tumor in her liver, and a chemical imbalance--the District Court should not have precluded her from requesting an award of maintenance in the future, depending upon complications which could arise in her health situation. We will consider this issue, even though the District Court has been instructed to reconsider its maintenance decision, because we do not know what the outcome of that reconsideration will be, and because, depending on the District Court's decision, this issue may still be relevant.

Section 40-4-208, MCA, provides that a district court may, in certain instances, order a modification of a maintenance provision in a decree of dissolution. That section provides in relevant part:

> (1) Except as otherwise provided in 40-4-201(6), a decree may be modified by a court as to maintenance or support only as to installments accruing subsequent to actual notice to the parties of the motion for modification.

11

(2) (a) Whenever the decree proposed for modification does not contain provisions relating to maintenance or support, modification under subsection (1) may only be made within 2 years of the date of the decree.

(b) Whenever the decree proposed for modification contains provisions relating to maintenance or support, modification under subsection (1) may only be made:

(i) upon a showing of changed circumstances so substantial and continuing as to make the terms unconscionable;

(ii) upon written consent of the parties; or

(iii) upon application by the department of public health and human services, whenever the department of public health and human services is providing services under Title IV-D of the federal Social Security Act . . . .

In *In re Marriage of Cooper* (1985), 216 Mont. 34, 37, 699 P.2d 1044, 1046, we held:

A petition for modification with respect to maintenance must be considered by the District Court if it is filed within two years of the date the decree is rendered, regardless of whether the decree contains provisions for maintenance or whether maintenance payments are currently being paid. If two years has expired since the dissolution decree was rendered, modification is still possible when the decree contains a provision relating to maintenance. When maintenance payments are currently mandated under the decree, a modification petition must be considered by the District Court.

(Emphasis added.)

We conclude that a district court's obligation to entertain a motion to modify its prior decision regarding maintenance is defined by statute and not by the decree for which modification is sought.

For example, pursuant to the District Court's original decree of dissolution, entered December 1, 1995--which did not contain a provision awarding Dorothy maintenance--Dorothy would have been able to petition that court for modification of its decision not to award maintenance until December 1, 1997, regardless of language to the contrary in the court's findings of fact and conclusions of law. Section 40-4-208(2)(a), MCA. In light of

12

this Court's decision to remand this case to the District Court for reconsideration of marital property division and maintenance, however, that date is no longer applicable. If, on remand, the District Court reaffirms in its amended decree that Dorothy is not entitled to maintenance, Dorothy can still move for modification of maintenance within two years of the date of that amended decree, pursuant to § 40-4-208(2)(a), MCA. If, however, the District Court determines in its amended decree that Dorothy is entitled to maintenance, Dorothy will have an unlimited time in which to file her motion for modification of maintenance, pursuant to § 40-4-208(2)(b), MCA. In either case, the District Court will be required to entertain Dorothy's motion for modification of maintenance, pursuant to § 40-4-208, MCA.

Therefore, to the extent that the District Court concluded it did not have to reconsider maintenance after the entry of its decree and judgment, we conclude that the court erred. However, in light of our resolution of Issue 1, and the fact that any future motion for modification is controlled by statute, we conclude that error was harmless.

## ISSUE 3

Did the District Court abuse its discretion when it refused to award Dorothy attorney fees and costs she incurred in her response to James's post-trial motions?

A district court's decision to award or not to award attorney fees is largely discretionary. We will not disturb a district court's judgment related to the issue of attorney fees absent an abuse of that discretion. *In re Marriage of Swanson* (1986), 220 Mont. 490, 496, 716 P.2d 219, 223.

13

In this case, Dorothy contends that the District Court abused its discretion when it declined to award her attorney and expert witness fees which she incurred in order to respond to James's post-trial motion to amend the District Court's findings of fact and conclusions of law. Dorothy maintains that the District Court had authority, pursuant to § 40-4-110, MCA, to award her post-trial costs for James's allegedly meritless motion to amend.

Section 40-4-110, MCA, provides:

> The court from time to time, <u>after considering the financial resources of both parties</u>, may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceedings under chapters 1 and 4 of this title and for attorney's fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceedings or after entry of judgment. The court may order that the amount be paid directly to the attorney, who may enforce the order in his name.

(Emphasis added.) Pursuant to that section, the District Court is required to "consider[] the financial resources of both parties" when it decides whether costs and attorney fees should be awarded. In the underlying dissolution action in this case, the District Court concluded that:

> Each party has been awarded substantial property interests some of which have significant future earning potential. Consequently, each party has the means, resources and ability to pay his/her own attorney's/expert witness fees and costs without assistance from the other.

Although we conclude that the District Court did not abuse its discretion when it declined to award attorney fees and costs to Dorothy based on its division of property in its original decree, we do not know what the parties' property or income will be following the amended decree, and therefore, hold that Dorothy is not precluded from raising the issue of

14

attorney fees on remand so that it can be considered in light of the parties' actual "financial resources."

CONCLUSION

We reverse the District Court's valuation of James's interest in Gallatin Valley Furniture, and remand to that court for entry of judgment consistent with this opinion, and for redistribution of the parties' marital assets and reevaluation of Dorothy's need for maintenance, fees, and costs in light of this holding. In addition, we conclude that any future application or motion for modification of whatever decision the court makes regarding Dorothy's need for maintenance is controlled by § 40-4-208, MCA, notwithstanding language to the contrary in the court's decree or judgment.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____
Justices

15

Justice Karla M. Gray, specially concurring.

I concur in the Court's opinion on issues two and three and specially concur on issue one, regarding the valuation of James' interest in Gallatin Valley Furniture. In that regard, I agree with our adoption of the *Amodio* rationale and, as a result, with our conclusion that Neil's valuation of James' interest was conclusive on the District Court because it was the only valuation in evidence which took the restrictive shareholders' agreement into account.

I disagree, however, with the Court's creation of a presumption that the valuation of stock contained in a shareholders' agreement is the real value of a shareholder's interest in a closely held corporation if the shareholders have employed an accepted method of valuation and there is no evidence that the valuation was undertaken in bad faith or for the purpose of avoiding marital or debtor/creditor responsibilities. I see no need for such a presumption in light of the fact that there is no uniform rule for valuing stock in closely held corporations. *See Amodio*, 509 N.E.2d at 936. So long as the valuation method used takes *into consideration inhibitions on the transfer of such stock arising from limited marketability* or restrictions in a shareholders' agreement, there is no reason for this Court to give favored treatment to the valuation contained in the shareholders' agreement by according it a presumption of "real value."

_____
Justice

16

April 15, 1997

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Edmund P. Sedivy, Jr.
MORROW, SEDIVY & BENNETT, P.C.
Box 1168
Bozeman MT 59771-1168

Kent M. Kasting
KASTING, COMBS & KAUFFMAN
517 South 22nd Avenue, #8
Bozeman MT 59715

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy
