No. 98-585

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 59

299 Mont. 20

997 P. 2d 760

IN THE MARRIAGE OF:

RONALD HANNI,

Petitioner and Respondent,

and

JACALYN HANNI,

Respondent and Appellant

APPEAL FROM: District Court of the Second Judicial District,

In and for the County of Silver Bow,

The Honorable John W. Whelan, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Carol Everly, Missoula, Montana

For Respondent:

Mark A. Vucurovich, Henningsen, Vucurovich & Richardson, Butte, Montana

_____

Submitted on Briefs: July 1, 1999

Decided: March 9, 2000

Filed:

_____

Clerk

Justice William E. Hunt, Sr. delivered the Opinion of the Court.

¶1.Jacalyn Hanni (Jacalyn) appeals the August 11, 1998, Findings of Fact and Conclusions of Law of the Second Judicial District Court, Silver Bow County, dissolving her marriage with Ronald Hanni (Ron), dividing the marital assets and obligations of the parties, and providing for the custody and support of the minor child of the marriage. We affirm.

¶2.The issues on appeal are:

I Did the District Court err in the equitable distribution of the marital property?

II Did the District Court err by not awarding Jacalyn maintenance?

III Did the District Court refuse to allow "full and complete discovery" for the purposes of determining Ron's financial status?

FACTUAL BACKGROUND

¶3.Jacalyn and Ron were married on April 23, 1981. At the time of this action, Ron was 55 years of age and Jacalyn was 45. One child, Ronald, Jr., was born of the marriage. He has yet to be emancipated and has been living with his father since the date of separation. Ron filed for dissolution on May 5, 1995. The parties have agreed on child custody and visitation with a Settlement Master.

¶4.During the marriage, the parties' standard of living was above average to high. Ron is a certified pubic accountant and has been a partner in his accounting firm since 1972. At the

time of the dissolution, Ron was receiving a gross draw of approximately $6,900 per month from his accounting practice, and an annual net bonus of between $11,000 and $12,000. During the marriage, Jacalyn worked a variety of jobs, attended college, and graduated with a degree in accounting. She was also a licensed real estate agent and engaged in sporadic employment as a real estate agent in Butte-Silver Bow County. For a time, Jacalyn also worked as an in-house bookkeeper at a casino in Butte. Thereafter, the parties purchased a restaurant known as "Terry's" for the purpose of starting their own casino operation.

¶5.The business was renamed "Jacalyn's," and Jacalyn was employed there as a full-time manager during the latter part of the marriage. Testimony at trial established that she worked as much as ten hours a day, five to seven days a week. Jacalyn took an average monthly draw of $2,415 during her time as a manager. By August 31, 1995, the restaurant sales, food, bar, machine, and live keno figures were down $324,927.00 from the previous year. In September, Ron took over management of the business, which was finally closed in July of 1996. After the couple's separation, Jacalyn moved to Washington state where she worked part-time as an accountant, for a total income of $13,585 in the year prior to the dissolution.

¶6.The parties filed a business bankruptcy, but substantial debts associated with the business were personally guaranteed by Ron. Although Jacalyn has the option of filing for bankruptcy (and since the judgment, has done so) Ron is precluded from filing personal bankruptcy because many of the personal guarantees associated with the failed business are to clients of the accounting firm of which he is a partner. Should Ron file personal bankruptcy, the result would be that he would no longer maintain the income he now has as a partner of the accounting firm, and he would also lose any interest he has in various other partnerships.

¶7.The District Court ordered the assets of the marriage consisting of personal property, life insurance, stock in Ron's accounting partnership, interest in P.B. Partnership, interest in P.G.A. Building, and interest in Ron's profit-sharing plan be distributed with a total of $174,317 going to Ron and $44,708 to Jacalyn. The court additionally ordered $234,775 in marital and personally guaranteed business debt to Ron, and $53,084.29 of personal debt to Jacalyn which was incurred by her after the marriage. The District Court concluded that Jacalyn was not entitled to maintenance.

¶8.I Did the District Court err in the equitable distribution of the marital property?

## STANDARD OF REVIEW

¶9. In 1992, this Court changed its standard of review regarding a district court's findings of fact in the division of marital estates from an abuse of discretion standard to a clearly erroneous standard. *In re Marriage of Sacry* (1992), 253 Mont. 378, 381, 833 P.2d 1035, 1037; *In re Marriage of Danelson* (1992), 253 Mont. 310, 317, 833 P.2d 215, 219. We review the factual findings of a district court relating to the division of marital property to determine whether the court's findings are clearly erroneous. *In re Marriage of DeCosse* (1997), 282 Mont. 212, 217, 936 P.2d 821, 824; *Danelson*, 253 Mont. at 317, 833 P.2d at 219.

¶10. We review a district court's conclusions of law relating to the division of marital property to determine whether those conclusions are correct. *DeCosse*, 282 Mont. at 217, 936 P.2d at 824; *Danelson*, 253 Mont. at 317, 833 P.2d at 219-20. The basis for simply determining if the lower court's conclusions are correct is that there is no discretion in determining a question of law. The lower court either correctly or incorrectly applies the law. *Steer, Inc. v. Department of Revenue* (1990), 245 Mont. 470, 803 P.2d 601.

¶11. The distribution of marital property in a dissolution action is governed by § 40-4-202, MCA, which provides in part:

[i]n a proceeding for dissolution of a marriage, legal separation, or division of property following a decree of dissolution . . . the court, without regard to marital misconduct, shall . . . finally equitably apportion between the parties the property and assets belonging to either or both, however and whenever acquired and whether the title thereto is in the name of husband or wife or both . . . . [T]he court shall consider the duration of the marriage . . . ; the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and needs of each of the parties; custodial provisions; whether the apportionment is in lieu of or in addition to maintenance; and the opportunity of each for future acquisition of capital assets and income.

Section 40-4-202(1), MCA.

¶12. The District Court found that Ron's employability is good, his opportunity to acquire income or assets is excellent, and his health was questionable due to a recent 21 day stay in the hospital and a two month recovery period. The Court further found that Jacalyn could work full-time as an accountant if she chooses to, but that since the date of

separation she has made little effort to obtain full-time employment. It found that Jacalyn's health, up to the date she left her job at Jacalyn's Restaurant, was good. She had no health problems until the dissolution, and stress caused by the dissolution has caused her to work part-time.

¶13. In analyzing the parties' financial situation, the District Court found that after the sale of the business and the business bankruptcy, the parties were left with debt that was personally guaranteed. The Court found that Ron should assume all marital debt and remaining debt from the operation of Jacalyn's, totaling $234,755. Ron also personally guaranteed debt owed to former owners of Jacalyn's in the amounts of $105,670 and $62,602. Additionally, Ron owes $3,333 to a former partner of the accounting firm for the purchase of stock. The court found that Jacalyn had incurred significant debt after the parties' separation, and had increased her spending habits since the separation. At the time of trial she had incurred personal debt in the amount of $53,084.29.

¶14. The District Court found that at the time of the marriage, Ron had an interest in his profit-sharing plan of $20,287, and Jacalyn had a bank account of $34,780.57. The court found that the interest in the profit-sharing plan was not an asset of the marriage, but concerning Jacalyn's bank account stated; "the evidence presented clearly shows that the money was co-mingled" with marital assets which were used for the down payments on the purchase of two different homes. The court found that the money was considered an "investment made and lost during the marriage" because all real property owned by the parties was sold and the proceeds used to pay off debt secured by the property.

¶15. The District Court concluded that the assets and debts of the marriage were to be distributed as follows: Jacalyn received $33,335 in personal property and a total of $11,373 in cash from a life insurance policy for a total asset distribution of $44,708. Ron received $7,602 in Newland and Co. (accounting firm) stock, a partnership interest worth $57,775 in Professional Bldg. Partnership, $3,200 of partnership interest in P.G.A. Building, Deer Lodge, and $66,615 in the accounting firm's profit-sharing plan, for a total asset distribution of $174,317. Ron then received $234,775 in marital and failed business debt which was personally guaranteed by him. The court gave to Jacalyn the $53,084.29 in personal debt which she had incurred after the couple had filed for dissolution.

¶16. In support of its distribution of the marital debts and assets, the District Court stated that the interest in Newland and Co. stock, the Professional Bldg. Partnership, the P.G.A. Bldg. (Deer Lodge) and the profit-sharing plan were to go to Ron as their value of

$135,192 was approximately 57.6 percent of the debt he had personally guaranteed and all of which would be lost if he filed personal bankruptcy. It further found that the business venture known as Jacalyn's resulted in the complete eradication of any marital estate that was accrued by the parties prior to that time, and concluded that if Ron did not honor his personal guarantees with regard to the failed business, his position as a partner in the accounting firm would be in jeopardy because the firm would lose clients and credibility in the community.

¶17. Jacalyn claims the District Court did not act within its discretion in dividing the property because it imposed a *de facto* stock discount upon shares in the Professional Corporation, failed to include the interest in Ron's profit-sharing plan as marital asset, and interjected fault into a no-fault dissolution.

## Stock Valuation

¶18. The testimony of Jacalyn and her expert, a C.P.A., estimated the value of Ron's partnership profit-sharing interest at $243,365 based upon 1994 figures. This value was calculated prior to major borrowing as a result of business losses and other spending by the parties. The District Court found this testimony not credible as it was based on projections that did not occur, because this value did not take into account outstanding uncollectible loans in it, and because the expert testified that the best evidence of value is the current status of the plan.

¶19. The District Court adopted Ron's value of the plan, ($31,615) but added an additional $35,000 for additions and earnings to the plan for a value of $66,615. The court further found that the stock valuation was determined by the stock purchase agreement. Pursuant to that agreement, the value was $7,602. The court also found that Ron's interest in the partnership buildings was controlled by the partnership agreement for Professional Building Partnership and that the equity in the office building located at 2900 Lexington Avenue in Butte, Montana was $210,000, with Ron's 25 percent interest totaling $57,775 as of January 2, 1998. Finally, the District Court found that the partnership equity in the P. G.A. Company (office building in Deer Lodge, Montana) was $12,800, with Ron's 25 percent interest valued at $3,300 as of January 2, 1998.

¶20. This Court has established several principles by which we review a district court's valuation of marital property. It is well settled law that "[w]hen there is a dispute over property in a marriage dissolution, the district court may assign any value that is within the

range of values presented into evidence." *In re Marriage of Taylor* (1993), 257 Mont. 122, 127, 848 P.2d 478, 481. "However, if the values are widely conflicting, then the district court must state its reasons for determining a certain value." *Marriage of Taylor*, 257 Mont. at 127, 848 P.2d at 481. *In re Marriage of McNellis* (1994), 267 Mont. 492, 499, 885 P.2d 412, 416.

¶21. In this case, the District Court assigned a value within the range presented into evidence at trial. It chose Ron's valuation, added nearly $35,000 to it, and then gave its reasons for determining that value.

¶22. This Court has stated that:

[a] District Court has broad discretion in determining the value of property in a dissolution. Its valuation can be premised on expert testimony, lay testimony, documentary evidence, or any combination thereof. The court is free to adopt any reasonable valuation of marital property which is supported by the record. As long as the valuation of property in a dissolution is reasonable in light of the evidence submitted, we will not disturb the finding on appeal.

    *In re Marriage of Robinson (1994), 269 Mont. 293, 296, 888 P.2d 895, 897.*

¶23. We conclude that the District Court's valuation of the stock was reasonable and supported by the evidence. It was not clearly erroneous and we will not disturb that finding on appeal.

Profit Sharing

¶24. Jacalyn asserts that she was the primary care provider for the children and contributed her time to the operation of the family business for the benefit of the entire family. She claims this allowed Ron the opportunity to maintain his accounting duties without taking time from those duties to care for the children and operate the family business. As a result, she believes the $20,287 profit-sharing plan in Ron's accounting firm should be included in the marital estate as was the $34,780.57 bank account which she had prior to the marriage.

¶25. The bank account which Jacalyn brought into the marriage was not segregated from the other marital assets but was co-mingled when it was used as a down payment on the

purchases of the parties' homes. As the District Court noted, ". . . these monies were co-mingled with marital assets and as such are considered investments made and lost during the marriage. All real property owned by the parties was sold and the proceeds used to pay off debt that was secured by it." In contrast, Ron had an established interest in the profit-sharing plan at the time of the marriage. Although Jacalyn was arguably the primary care provider, the record does not reflect how her non-monetary contributions would have facilitated the maintenance of a profit-sharing interest which existed prior to the marriage.

¶26.Section 40-4-202 (1), MCA, provides in part:

[i]n dividing property acquired prior to the marriage . . . the court shall consider those contributions of the other spouse to the marriage, including: (a) the non-monetary contributions of a homemaker; (b) the extent to which such contributions have facilitated the maintenance of this property; and (c) whether or not the property division serves as an alternative to maintenance arrangements.

Section 40-4-202 (1)(a)-(c), MCA.

¶27.J27.acalyn argues that "based upon § 40-4-202(1)(b), MCA, the circumstances demand a re-analysis of the findings." As previously stated, we review the factual findings of a district court relating to the division of marital property to determine whether the court's findings are clearly erroneous.

¶28.In light of the amount of debt that the District Court assigned to Ron, its grant to him of the profit-sharing plan is reasonable. Section 40-4-202, MCA, vests the district court with broad discretion to apportion the marital estate in a manner which is equitable to each party under the circumstances. *In re Marriage of Maedje* (1994), 263 Mont. 262, 265, 868 P.2d 580, 582. Ron received roughly $175,000 in assets, and $235,000 in debt. Jacalyn received approximately $45,000 in assets and $53,000 in debt. The District Court's distribution of marital assets was not clearly erroneous and we will not disturb that finding on appeal.

Fault

¶29.Jacalyn claims the District Court made findings which interjected fault into the dissolution. She alleges that the following findings:

[s]ince the date of separation, Jacalyn has made little effort to obtain full-time employment . . . ; [u]nder Jacalyn's management of the restaurant, sales in food, bar, machine and live keno were down $324,927.00 . . . ; [o]n September 15, 1995, Ron took over management of the restaurant and due to the debt condition, it was closed in July of 1996; Jacalyn has no restrictions to filing personal bankruptcy and can discharge her . . . debt by doing so; Jacalyn has incurred significant personal debt after the separation of the parties . . ." amount to an interjection of fault into the dissolution which dictates reversal and remand of this case for a trial upon the merits.

¶30.Section 40-4-202, MCA, expressly provides that the court is not to consider any marital misconduct in disposing of the marital assets. In *Collett v. Collett* (1981), 190 Mont. 500, 621 P.2d 1093, the district court concluded that the husband "be required to pay the . . . balance remaining unpaid upon said home and land as it becomes due in partial recompense for the failure of [the husband] to account to [the wife] for her share of the (proceeds of the 1978 real estate sale.)" *Collett*, 190 Mont. at 503, 621 P.2d at 1095. This Court found that such a conclusion was "akin to an assessment of punitive damages." *Collett*, 190 Mont. at 504, 621 P.2d at 1095.

¶31.We conclude that those findings with which Jacalyn takes issue were proper and aided the District Court in considering the equitable distribution of the property. They did not interject fault into the dissolution and do not dictate reversal of the District Court.

¶32.II Did the District Court err by not awarding Jacalyn maintenance?

¶33.In reviewing an award of maintenance, this Court's role is limited to a determination of whether the District Court's findings are clearly erroneous. *In re Marriage of Eschenbacher* (1992), 253 Mont. 139, 142, 831 P.2d 1353, 1355.

¶34.Prior to judgment, the parties stipulated that starting August 10, 1995, Ron would pay Jacalyn maintenance in the amount of $1,600 per month. On October 7, 1996, the District Court reduced the maintenance payment to $800 per month when testimony showed that Ron was having to borrow money in order to make the payments. Ron's total spousal support obligation over that time period was $37,600, of which he paid $17,000. The District Court also found that during that same period, from August, 1995, through October, 1996, Ron paid $7,230.39 toward Jacalyn's expenses, $19,734.55 in mortgage payments, and $10,959.42 in cash payments. As a result, the court found that Ron's payments for Jacalyn's benefit "clearly exceed the [maintenance] obligation" which he

owed to Jacalyn.

¶35.Jacalyn argues that the District Court failed to distinguish between income-producing and income-consuming property and erred in applying the rules for awarding maintenance.

## Characterization of Property

¶36.Jacalyn claims the District Court failed to distinguish between income-producing and income-consuming property and that such error constitutes prima facie error justifying this Court's reversal and remand for a new trial on the merits. The district court may award maintenance **only if** it finds that the spouse seeking maintenance: (a) lacks sufficient property to provide for his reasonable needs; **and** (b) is unable to support himself through appropriate employment . . . . § 40-4-203(1), MCA (emphasis added). This Court has defined "sufficient property" as that phrase appears in § 40-4-203(1)(a), MCA, to mean that the property must be income-producing rather than income-consuming. *Pfeifer v. Pfeifer* (1997), 282 Mont. 461, 473, 938 P.2d 684, 692.

¶37.Moreover, the true net worth of the marital estate must be accurately determined in accordance with the requirement of § 40-4-202, MCA, before the issues of equitable apportionment and maintenance can be resolved. *In re Marriage of Lundvall* (1990), 241 Mont. 172, 175, 786 P.2d 10, 12. This Court has stated that:

a specific finding regarding the nature of the properties awarded to the spouse seeking maintenance is required. *In re Marriage of Tow,* 229 Mont. 483, 486, 748 P.2d 440, 441-442. Indeed, such specific findings are encouraged in order that, on review, this Court can follow a district court's rationale more closely. Subsequent to *Marriage of Tow*, however, we clarified the "specific finding" requirement by stating that such a finding is not required when "[i]t is obvious from the findings and conclusions that the court considered the character of the property . . ." in addressing the award of maintenance. *In re Marriage of Cole* (1988), 234 Mont. 352, 356, 763 P.2d 39, 42.

*In re Marriage of Dorville (1992), 254 Mont. 111, 114-15, 836 P.2d 588, 590.*

¶38.We have discussed this rationale for differentiating between income-producing property and income-consuming property. Citing the California Court of Appeals we stated:

the practical effect of a property division awarding income consuming property to one spouse and income producing property to the other leaves one spouse in possession of property the spouse is unable to maintain while placing the other party in control of assets that generate a comfortable living . . . [t]he [California] court found this situation inequitable and held that maintenance should be employed as a remedy.

*In re Marriage of Herron* (1980), 186 Mont. 396, 408, 608 P.2d 97, 103 (*citing Brawman v. Brawman* (1962), 199 Cal.App.2d 876, 19 Cal.Rptr. 106, 110).

¶39.In its Supplemental Memorandum Re Maintenance, intended to clarify and supplement the Findings of Fact and Conclusions of Law entered in this matter, the District Court stated:

[t]he financial aspect of this dissolution was particularly difficult to resolve. The business venture known as Jacalyn's Restaurant resulted in the dissipation of any marital estate that was accrued by the parties prior to that time. This Court took into account Ron's financial situation, the personal guarantees he was required to make in order to retain his position at Newland and Company, Jacalyn's ability to work full-time, and her apparent disregard for living within her means.

Jacalyn has an income producing asset, namely her degree and her experience in accounting. Additionally, there is no question but that she could meet her needs, were she not living beyond her means. Furthermore, Jacalyn failed to prove an inability to support herself through appropriate employment.

It is doubtful that either party will ever maintain the standard of living enjoyed during the marriage prior to the opening of Jacalyn's Restaurant. The record evidence disclosed that Ron cannot meet the needs of his son, service the debt resulting from the marriage and pay maintenance. This Court found that Jacalyn had the ability to gain full-time employment which would provide her with sufficient income. On the basis of these findings, this Court found that Jacalyn did not meet either of the statutory requirements for an award of maintenance.

¶40.The District Court clearly found that Jacalyn did not meet the two requirements necessary to award maintenance under § 40-4-203(1)(b), MCA, and we have concluded that the court equitably divided the property between the parties. Furthermore, there was testimony that Jacalyn worked 10 hours a day, 5-7 days per week while managing

Jacalyn's, and the record shows that Jacalyn is able to support herself through appropriate employment. As a result, we can not conclude that it was clearly erroneous for the District Court not to award Jacalyn maintenance. In the final analysis, "[i]t is not a question of whether we could be persuaded to reach a different conclusion after considering the same evidence. The test is whether the District Court had adequate evidence to support its conclusions." *Pfeifer,* 282 Mont. at 474, 938 P.2d at 692.

¶41. We conclude that the specificity of the District Court's findings as to the value of the profit-sharing interest, partnership interests, and properties demonstrates that it sufficiently considered the nature of those assets. The District Court's findings are supported by substantial evidence, and are not clearly erroneous. While it is certainly unfortunate that both parties in this matter leave the marriage with significantly more debts than assets, the District Court did not err in its decision not to award Jacalyn maintenance.

¶42. III Did the District Court refuse to allow "full and complete discovery" for the purposes of determining Ron's financial status?

¶43. Jacalyn argues that the District Court refused to allow her full and complete discovery because it struck from the Deposition and Subpoena Duces Tecum, references to income tax returns and other financial documents for Newland and Co., Professional Bldg. Partnership, and P.G.A. Company. She claims that as a result she could not prepare a case and therefore such refusal is clear error justifying the reversal and remand of this case for trial on the merits. Ron asserts that Jacalyn now raises these issues for the first time on appeal, and therefore this Court should not consider them.

¶44. The general rule in Montana is that this Court will not address either an issue raised for the first time on appeal or a party's change in legal theory. *Unified Industries, Inc. v. Easley*, 1998 MT 145, ¶ 15, 289 Mont. 255, ¶ 15, 961 P.2d 100, ¶ 15. The basis for this general rule is that "it is fundamentally unfair to fault the trial court for failing to rule correctly on an issue it was never given the opportunity to consider." *Easley*, ¶ 15.

¶45. After a thorough review of the record, there is no evidence that Jacalyn ever objected below to the District Court's striking of any portion of her discovery requests. Therefore, we will not now consider that issue on appeal.

¶46. Affirmed.

/S/ WILLIAM E. HUNT, SR.

We Concur:

/S/ J. A. TURNAGE

/S/ JAMES C. NELSON

/S/ JIM REGNIER

/S/ TERRY N. TRIEWEILER